Gavin Mehl
5960 S Land Park Dr. #1166
Sacramento, California ~95822
(917)304-6089 emergency cell
mehlgavin@gmail.com

Ron Cupp
150 Raley Town Center Ste 2512
Rohnert Park, CA 94925
(707) 318-9929
ronc2009@gmail.com

Consumer Plaintiff(s) in *Pro Se*

FILED

JAN 20 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAVIN MEHL; RON CUPP; and DOES 1-10 inclusive consumers<br><br>Plaintiff(s),<br><br>Vs.<br><br>WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2016-1, A DELAWARE STATUTORY TRUST; SNELL & WILMER L.L.P; ANDREW B STILL an individual, and DOES 1-10 inclusive,<br><br>Defendant(s). | Case No.: 2:21-cv-01861-TLN-JDP<br><br>**OPPOSITION TO MOTION TO STRIKE FIRST AMENDED COMPLAINT PURSUANT TO CCP 425.16 AND DISMISS PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MEHL AND CUPP IN SUPPORT OF**<br><br>[Filed concurrently with Objections and Counter-Motion to Strike Defendant's certain scandalous and immaterial matter as to defendants Anti-Slapp Motion and Motion to Dismiss]<br><br>**REQUEST FOR ORAL ARGUMENT**<br><br>Hearing Information:<br>Date:       February 3, 2022<br>Time:       10:00 a.m.<br>Courtroom:  9<br>Address:    501 I St. Sacramento, CA |

-1-

OPPOSITION TO AS TO ANTI-SLAPP MOTION AND MOTION TO DISMISS

TO DEFENDANTS AND THEIR COUNSEL:

Plaintiff(s) Gavin Mehl and Ron Cupp ("Plaintiff(s)") hereby oppose defendant(s) WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2016-1, A DELAWARE STATUTORY TRUST ("WT"); SNELL & WILMER L.L.P ("Snell & Wilmer"); ANDREW B STILL ("Still") (collectively "defendant(s)") motion to strike first amended complaint pursuant to CCP 425.16 and to dismiss pursuant to FRCP 12(b)(6) (hereinafter "defendant's brief").

This opposition to defendant's brief is made timely pursuant to Local Rule 230 and Fed. R. Civ. P. 78. Filed concurrently is Plaintiffs Objections In Support of Opposition as to Anti-Slapp Motion and Motion to Dismiss. Also, Plaintiff's Counter-Motion to Strike Defendant's certain scandalous and immaterial matter as to defendants Anti-Slapp Motion and Motion to Dismiss ("Counter-Motion"), which will be heard concurrently with defendants brief at the above court, location, date, time and department.

This opposition to the defendant's brief is supported by the Objections to Counter-Motion, the Memorandum of Points and Authorities appended hereto, the pleadings and papers on file in this action, and any other matter that may properly come before the court.

Pursuant to RULE 230 and Fed. R. Civ. P. 78(a), Plaintiff hereby respectfully request Oral Argument in the interest of this case being a '**case of first impression.**

Respectfully,

Dated: January 20, 2022        /s/ Gavin: Mehl.
                               _____
                               Gavin Mehl, Plaintiff *Pro Se*

Dated: January 20, 2022        /s/ Ron Cupp
                               _____
                               Ron Cupp, Plaintiff *Pro Se*

-2-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case provides abundant evidence of the use of abusive, deceptive and unfair debt collection practices by defendants as to plaintiffs. Defendants' abusive debt collection practices contributed to plaintiffs denial of financing and invasions of plaintiffs individual privacy.

Gavin Mehl owed $59,208.24 in back rental debt. WT was assigned/sold/transferred the debt in default and became a debt collector by operation of law. WT referred Mehl to Snell & Wilmer and initiated a suit. Nine months later, WT dismissed the suit. Mehl was turned down for credit based upon the dismissed case. Mehl served a Notice of Dispute on WT. WT did not respond. Instead, initiated a new lawsuit, placed a series of collection calls using atds capabilities amended the complaint to add Ron Cupp. Cupp, without knowledge of the suit, applied for credit and was turned down due to the reporting. Plaintiffs sent disputes to the Credit Reporting Agencies ("CRA"). The CRA's contacted the furnisher defendants. The furnisher defendants failed to respond to the CRA's. Plaintiffs requested reinvestigation to the CRA's and initiated this First Amended Complaint ("FAC").

Plaintiff's FAC shines a bright light on 'debt collector' defendants willful, malicious and despicable disregard for Federal and State Consumer Protection laws consumer protection laws.

Defendant's despicable conduct includes manufacturing inadmissible hearsay evidence from non-existent witnesses to collect from Plaintiff using unethical litigation strategy. Unauthorized use of plaintiffs personal identifying information to obtain money or property. Snell & Wilmer terminated Lynsey Torp for her unfair debt collection practices as to plaintiff. Instead of preventing further violations, defendants hired Andrew Snell to continue the violations of consumer protection law.

### A. Preliminary Objection

Plaintiff hereby objects to specific portions of defendant's brief and defendants Request For Judicial Notice in support of Defendants brief as inadmissible hearsay. The Objections in Support of Opposition as to Anti-Slapp Motion and Motion to Dismiss, filed concurrently, incorporated by this reference.

## II.  FACTUAL BACKGROUND

Gavin Mehl ("Mehl") began renting a home in Sacramento, California in June 2020 [FAC ¶ 11 and Mehl Declaration is incorporated by this reference ("GM Decl") ¶2 ]. Unexpected hardship caused Mehl to default and in Sept 2020.  Mehl was served a failure to pay rent from the landlord ("debt") [FAC ¶ 12, GM Decl ¶2]. One month later WT was assigned/sold or transferred Mehl's landlords interest in the debt, served a notice to quit and Snell & Wilmer filed case 20UD01465 [FAC¶ 13-16, GM Decl ¶2]]. By operation of law, WT and Snell & Wilmer and Andrew Still is a 'debt collector' by the assignment of the debt in default.

In May 2020, WT and Snell & Wilmer stipulated to pay Mehl costs of suit and dismissed case 20UD01465 [FAC ¶ 18, GM Decl ¶2].

In June 2020, Mehls application for rental house financing was denied due to WT and Snell & Wilmers inaccurate reporting of the dismissed case 20UD01465 [FAC ¶ 20-26, GM Decl ¶3].

The next day, Mehl served WT's Agent of Service CSC a Notice of dispute by FED EX . Mehl disputes the debt and request/demand for validation and or verification of the debt as defined by 15 USC 1692g(1)(2)(5)(b) and Civil Code 1788 et seq., as shown in **exhibit 5** and incorporated by reference [FAC ¶ 27-28, GM Decl ¶4]. WT failed to respond to the Notice of dispute and Snell & Wilmer initiated case 21UD01125 [FAC ¶ 30-35, GM Decl ¶4].

### a.  Threshold Matter is Plaintiff's Admission to the total Debt owed in Discovery

As a threshold matter, in discovery of case 21UD01125, defendants admitted total debt owed $59,208.24 as shown in **Exhibit 8** of FAC incorporated by this reference [FAC ¶ 38, GM Decl ¶5].

Snell & Willmer began a series of collection calls to Mehl's using a device with the capacity to store a telephone number using a random or sequential generator (see ¶ 48-89 FAC, GM Decl ¶6).

Ron Cupp ("Cupp") was denied credit due to inaccurate reporting of case 21UD01125 (FAC ¶ 46, 47, 90-102) Ron Cupp Declaration is incorporated by this reference ("Cupp Decl" ¶1-3). Cupp informed the credit reporting agencies ("CRA's") that their credit reports included inaccurate information [FAC ¶ 103 **Exhibit 11**, Cupp Decl ¶5). Mehl informed the credit reporting agencies ("CRA's") that their credit reports included inaccurate information on cases 20UD01465 and 21UD01125. Cupp informed the credit reporting agencies ("CRA's") that their credit reports included inaccurate information on case 21UD01125. Plaintiffs requested a description of the investigation procedure for and a copy of the ADCV forms sent to the furnishers and the return forms AUDs, received back [FAC ¶ 103-104 **Exhibit 11-11**, Cupp Decl ¶5, GM Decl ¶6].

In October 2021, the CRA's submitted a formal notice of consumer dispute to defendants. Defendants failed to respond directly to the CRA's from the consumer notice of dispute sent directly by the CRA's. Plaintiffs were unsatisfied by the response from the CRA's so they served reinvestigation request to the CRAs. The CRA's submitted a formal reinvestigation notice of consumer dispute to defendant. Defendants failed to respond a second time directly to the CRA from the reinvestigation request [FAC ¶ 107-110, Cupp Decl ¶6-7, GM Decl ¶7-10].

Despite multiple notices of disputes sent and the Consumer Notice of Dispute that the CRA's sent to defendants, defendants have not informed any of the CRAs that a dispute exists concerning the accuracy of the reporting of cases 20UD01465 and 21UD01125. To this day the

record in question is being reported by defendants as inaccurate to CRAs without any indication that the records are being disputed.

On October 8, 2021, Plaintiffs' filed the instant action (Dkt. No. 1). Defendants filed their Motion to Strike Complaint Pursuant to Cal. Code. Civ. Proc. § 425.16 and to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("Motion to Strike"). [*See generally*, Motion to Strike (Dkt. No. 7)].

The parties stipulated to allow Plaintiffs an extension of time to file a first amended complaint. [*See generally*, Stipulation (Dkt. No. 14)]. On December 3, 2021, Plaintiffs filed the operative First Amended Complaint for violations of Consumer Protection Laws, including 15 U.S.C. § 1692 Fair Debt Collection Practices Act (hereinafter "FDCPA") and Civil Code § 1788 *et seq.*, California Rosenthal Fair Debt Collection Practices Act (hereinafter "Rosenthal"), 15 U.S.C. 1681s-2(b), Fair Credit Reporting Act (hereinafter "FCRA") and Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A) and 47 U.S.C. § 227(b)(1)(A)(iii),. [*See generally*, FAC (Dkt. No. 16)].

On December 18, 2021, Defendants filed their Motion to Strike First Amended Complaint Pursuant to Cal. Code. Civ. Proc. § 425.16 and to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("Motion to Strike"). [*See generally*, Motion to Strike (Dkt. No. 18)].

### III. THIS COURT SHOULD DENY DEFENDANTS ANTI-SLAPP MOTION AND MOTION TO DISMISS

Defendant does not rebut Plaintiffs allegations of being assigned Mehl's rental debt in default. Defendant does not explain why it chose not to respond to plaintiffs notice of dispute. Defendant provides no admissible evidence that it did respond to the CRA's consumer notice of dispute. Defendants inaccurately describe the FAC as if it had some effect on their state court eviction case. Defendants are well aware, a matter of law, a judgment in favor of plaintiff in the FAC will not overturn defendants state case. Had Defendant just responded to one of the four (4)

notice of disputes, collection efforts could have continued under Federal Law 15 USC 1692g. Defendant's ignorance of consumer protection law is no excuse to file this Anti-Slapp Motion.

Plaintiff's causes of action are for defendants behavior and conduct, not Defendants filing unlawful detainer and forcible detainer suits. Defendant provides no affidavits or admissible evidence in support of its Anti-Slapp Motion. Plaintiff shows likelihood of success on the merits by well plead facts which are sufficient to state a claim for relief for each cause of action. Therefore the Anti-Slapp Motion and Motion to Dismiss should be denied.

### A. <u>Legal Standard on an Anti-Slapp Motion under CCP 425.16</u>

A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88, 124 Cal.Rptr.2d 530, 52 P.3d 703 ( *Navellier* ).) *Aber v. Comstock 212 Cal.App.4th 931, 940 (Cal. Ct. App. 2012)*.

#### 1. <u>Plaintiffs Claims are Based on Defendants' Behahavior and Conduct</u>

Defendants Anti-Slapp Motion attempts claim filing of a Unlawful Detainer and Forcible Detainer case are bases for Plaintiffs Consumer Protection Complaint and therefore protected. To the contrary, this argument fails to address how the facts alleged in vivid detail in [FAC" ¶ 11-112] was based on an act in furtherance of defendant's right of petition or free speech, "[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman, (2002) 29 Cal.4th 69, 78*.

WT stipulated to dismiss case 20UD01465. Eighteen (18) days later, Mehl was denied rental house financing due to prior case 20UD01465 in which Mehl was the prevailing party [FAC" ¶ 19-26]. The next day Mehl served WT a notice of dispute, placing a statutory duty to

conduct an investigation, report incomplete or inaccurate information within the meaning of FCRA, to stop collecting and validate or verify the alleged rental debt [FAC" ¶27-28].

Acting in the furtherance of one's own interest is the sine qua non of the Anti-SLAPP Statute. As the Supreme Court in *Tuszynska v. Cunningham (2011) 199 Cal.App.4th 257, 267* explained: "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.".

## 2. Prevailing on The Merits

If the defendant meets its burden of establishing the application of the anti-SLAPP statute, the burden then shifts to the plaintiff to establish that its claim has "minimal merit." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.) This showing, referred to as "prong two," is akin to the showing required to defeat a summary-judgment motion. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 990.) The plaintiff therefore must present admissible evidence that could allow the plaintiff to obtain a favorable judgment if the plaintiff's evidence is credited. (*Navellier, supra,* 29 Cal.4th at pp. 88-89.) The court determines whether the plaintiff has met this burden by considering the pleadings and supporting and opposing affidavits "stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).)

### A. Plaintiff makes prima facie showing of FDCPA & Rosenthal Claim as to Defendants

"When alleging a claim under the FDCPA, a plaintiff must establish that (1) the plaintiff is a consumer, as defined by the FDCPA; (2) the debt arises out of a transaction primarily for personal, family or household purposes; (3) the defendant is a debt collector, as that phrase is defined by the FDCPA; and (4) the defendant violated a provision of the Act." Heritage Pacific Financial, LLC v. Monroy, 215 Cal. App. 4th 972, 997 11 (2013) (citing 15 U.S.C. § 1692e; Heintz v. Jenkins, 514 U.S. 291, 294 (1995)) (emphasis added)

1. Plaintiff is a consumer as alleged in alleged FAC ¶ 114] and debtor under Rosenthal FAC ¶ 118]

2. The debt arises from a lease agreement of the property, primarily used for personal, family or household purposes FAC ¶ 11, GM Decl ¶2]

3. <u>Defendant is a debt collector by operation of law</u>

After Mehl fell behind on rental debt, WT was assigned the debt in default and referred Mehl to Snell & Wilmer and initiated suit [FAC" ¶ 11-18]. Pursuant to 15 U.S.C. § 1692a(4) defendant is not a creditor. As an operation of law, WT, Snell & Wilmer and Andrew Still is a 'debt collector' by the assignment of the debt in default.

15 U.S.C. § 1692a
(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.
(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.
(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

4. Defendant violated the FDCPA and Rosenthal as shown in FAC ¶ 113-122]

**B. <u>Plaintiff makes prima facie showing of FCRA Claim as to Defendants</u>**

A private cause of action is available under § 1681s-2(b). *Gibbs*, 336 F. Supp. 2d at 11. However, such an action is only triggered when a furnisher of information receives a notice of a consumer dispute from a credit reporting agency. *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005) ("Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."); *Roybal v. Equifax*, 405 F.

OPPOSITION TO AS TO ANTI-SLAPP MOTION AND MOTION TO DISMISS

Supp. 2d 1177, 1179-80 (E.D. Cal. 2005) (recognizing "that a private right of action against a furnisher of credit information exists only if the disputatious consumer notifies the CRAs in the first instance").

Ron Cupp ("Cupp") was denied credit due to inaccurate reporting of case 21UD01125 (FAC ¶ 46, 47, 90-102) Ron Cupp Declaration is incorporated by this reference ("Cupp Decl" ¶1-3). Cupp informed the credit reporting agencies ("CRA's") that their credit reports included inaccurate information [FAC ¶ 103 **Exhibit 11**, Cupp Decl ¶5). Mehl informed the credit reporting agencies ("CRA's") that their credit reports included inaccurate information on cases 20UD01465 and 21UD01125. Cupp informed the credit reporting agencies ("CRA's") that their credit reports included inaccurate information on case 21UD01125. Plaintiffs requested a description of the investigation procedure for and a copy of the ADCV forms sent to the furnishers and the return forms AUDs, received back [FAC ¶ 103-104 **Exhibit 11-11**, Cupp Decl ¶5, GM Decl ¶6].

In October 2021, the CRA's submitted a formal notice of consumer dispute to defendants. Defendants failed to respond directly to the CRA's from the consumer notice of dispute sent directly by the CRA's. Plaintiffs were unsatisfied by the response from the CRA's so they served reinvestigation request to the CRAs. The CRA's submitted a formal reinvestigation notice of consumer dispute to defendant. Defendants failed to respond a second time directly to the CRA from the reinvestigation request [FAC ¶ 107-110, Cupp Decl ¶6-7. GM Decl ¶7-10].

Despite multiple notices of disputes and the Consumer Notice of Dispute that the CRA's sent to defendants, defendants have not informed any of the CRAs that a dispute exists concerning the accuracy of the reporting of cases 20UD01465 and 21UD01125. To this day the record in question is being reported by defendants as inaccurate to CRAs without any indication that the records are being disputed.

A furnisher is liable under the FCRA only if it does not respond to a formal notice of consumer dispute from a consumer reporting agency." *Arikat v. JP Morgan Chase Co.*, 430 F. Supp. 2d 1013, 1023-25 (N.D. Cal. 2006) (dismissing cause of action for violation of FCRA for

failure to state a claim); *see also* 15 U.S.C. § 1681s-2; 15 U.S.C. § 1681i(a)(2); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) (holding that Congress set up 15 U.S.C. § 1681s-2(b) as a "filtering mechanism" wherein a disputatious consumer notifies a consumer reporting agency which in turns notifies the furnisher, and only a nonresponsive furnisher may be privately sued).

When a furnisher receives such a notice, it must conduct an investigation, review information from the credit reporting agency, report the results of the investigation to the credit reporting agency, and, if the investigation uncovers that information was incorrectly furnished, report the inaccuracies to all consumer reporting agencies possessing the incorrect information. *Nelson*, 282 F.3d at 1060; 15 U.S.C. § 1681s-2(b). Rieger v. Am. Exp. Co.,No. C 11-4202 MEJ, 2011 WL 5080188 (N.D. Cal. Oct. 25, 2011)

Here, Plaintiff correctly alleges that defendants received a notice of dispute from the CRA which is required to trigger a private cause of action under § 1681s-2(b). Thus, Plaintiff's has stated a prima facia case to bring a claim under § 1681s-2(b).

### C. **Mehl makes prima facie showing of TCPA Claim as to Snell & Wilmer**

For liability to attach under the section of the TCPA she cites—47 U.S.C. § 227(b)(1)(iii), Plaintiff will need to prove (1) that Defendant called his on her cellphone, (2) using an automated telephone dialing system ("ATDS"), (3) without his prior consent. Perez v. Quicken Loans Case No. 19-cv-2072 (N.D. Ill. Mar. 27, 2020)

In its April 1, 2021 *Duguid* decision, the Supreme Court agreed with the Seventh Circuit, holding that in order for a device to constitute an ATDS under the TCPA, it must have the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1167, 1173 (2021). The Supreme Court concluded that the capacity to use a random or sequential number generator to either store or produce numbers is a "necessary feature" of an ATDS under the TCPA, and therefore a device is not an ATDS if it simply stores and dials numbers without using a number generator. *Id.* at 1173. The Court determined that the most reasonable interpretation of the TCPA's ATDS

definition is that the clause "using a random or sequential number generator" modifies both verbs in the statutory definition, "store" and "produce." *Id.* at 1169-70. The statutory context confirmed this reading, according to the Court, because the broader interpretation-*i.e.*, that the clause "using a random or sequential number generator" applied only to "produce"-would mean that the TCPA prohibits the use of equipment with the capacity to store and dial numbers, and would therefore "capture virtually all modern cell phones." *Id.* at 1171. The Court observed that "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw" to the "nuanced problems" of robocalling "when Congress meant to use a scalpel." *Id. Watts v. Emergency Twenty Four, Inc.* No. 20-cv-1820, at *2 (N.D. Ill. Jun. 21, 2021)

Here, Mehl has alleged essential facts that defendant Snell & Wilmer called his cell phone using a using a random or sequential number generator without his consent.  Mehl provides vivid detail of the description of how the calls cam in with a hollow tin, dead air sound and silence on the line causing Mehl to say "hello, hello, hello is anyone there". Then Snell & Wilmers Agent coming on the line after a few seconds.

Defendants fail to make a proper legal opposition to the TCPA alligations by using irrelevant citations under 47 C.F.R. § 64.1200. The legal argument fails in Defendants brief as a matter of law. Therefore both motions should be denied.

### D. Plaintiff met burden to have Defendants Anti-Slapp and Motion to Dismiss denied

#### 1. What is protected Activity?

Sunwest Masonry & Concrete, Inc. v. Zamora (Feb. 8, 2021, G058685) ___ Cal.App.4th __

When evaluating a special motion to strike, the trial court must engage in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67.) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e.,

that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (Navellier v. Sletten (2002) 29 Cal.4th 82, 89.) We review a trial court's order denying an anti-SLAPP motion de novo. (Flatley v. Mauro (2006) 39 Cal.4th 299, 325 (Flatley).)

Plaintiffs may defeat an anti-SLAPP motion by presenting prima facie evidence of their claim or claims to show a probability of success - irrespective of whether the claim is based on protected conduct. See, e.g., Navellier v. Sletten (2002) 29 Cal.4th 82, 87.

In evaluating an anti-SLAPP motion, the courts have adopted a two-step, burden-shifting analysis. Under the first step, the court considers whether the defendant has made a rebuttable showing that a plaintiff's cause of action arises from actions taken in furtherance of the defendant's right of petition or their right of free speech in connection with a public issue. CCP S. 425.16(b)(1); Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67.; CBS Broadcasting Inc.,(2013) 221 Cal.App.4th 1510, 1519. The second step is for the plaintiff to present the "minimal" evidence necessary to demonstrate a reasonable probability of prevailing on the merits. Robinzine v. Vicory (2006) 143 Cal.App.4th 1416, 1421.

The phrase "act in furtherance of a person*s right of petition or to free speech" must fall within one of the four categories described in CCP S. 425.16(e). Irrespective of which of the four categories listed in CCP *425.16(e)(2) applies, "[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." City of Cotati v. Cashman, (2002) 29 Cal.4th 69, 78.

2. **Prevailing On The Merits**

The Anti-Slapp statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning nor does it confer any kind of immunity on protected activity. Navellier v. Sletten, (2002) 29 Cal.4th 82, 93, 94. Instead, under *425.16, a plaintiff may pursue any other cause of action based on protected activity if he or she is able to present the "minimal" evidence necessary to demonstrate a reasonable probability of prevailing on the merits. Robinzine v. Vicory (2006) 143 Cal.App.4th 1416, 1421.

The Legislature did not intend for the courts to weigh conflicting evidence to determine whether it is more probable than not that a plaintiff will prevail on the claim, "but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation." Taus v. Loftus, (2007) 40 Cal.4th 683, 714. Thus, it is "the court's responsibility is to accept as true the evidence favorable to the plaintiff [citation omitted] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." HMS Capital, Inc. v. Lawyers Title Co., (2004) 118 Cal.App.4th 204, 212

Z.F. v. Ripon Unified School District, a non-precedential unpublished opinion, we stated: "If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards";

Here, Defendants factual challenge are unsupported and have no effect on the outcome of FAC. if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted."Z.F. v. Ripon Unified School District

Defendant's This defense fails, due to the failure to respond to any rebut receiving Mehl's Notice of Dispute on June 7, 2021 [FAC ¶27]. Defendants do not rebut receiving the

Judge Kozinski also criticized the ability of defendants to appeal denials of their anti-SLAPP motions: "Our acceptance of anti-SLAPP special motions was bad enough, but we made the problem worse by allowing defendants to bring interlocutory appeals. [Citation.] This case is a perfect example of the consequences of that decision. Robert Hirsh appealed to our court after the district court denied his meritless motion to strike. That was in the spring of 2014. Two years and a few hundred billable hours later, we're sending the case back for the district court to pick up right where it left off." (*Travelers Casualty Insurance Company of America v. Hirsh* (9th Cir. 2016) 831 F.3d 1179, 1184.)

### E. **Plaintiff should be awarded Reasonable Attorneys Fees and costs in defending Anti-Slapp Motion**

Defendant's special motion to strike is frivolous and brought only to delay answering the complaint. therefore plaintiff should be awarded costs and reasonable attorneys fees.

OPPOSITION TO AS TO ANTI-SLAPP MOTION AND MOTION TO DISMISS

Section 425.16(c) states in its entirety:

(c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

The prevailing party on a special motion to strike is entitled to attorney's fees and costs to compensate them for the expense of responding to the SLAPP suit and the motion. *S 425.16(c) U.S. v. Lockheed Missiles Space Co., Inc. 190 F.3d 963, 971 (9th Cir. 1999)*. Plaintiff in this case should be awarded reasonable attorneys fees and costs for having to defend this motion.

### F. Plaintiffs request leave to amend should the court dismiss the complaint

Plaintiff respectfully requests the court issue leave to amend should the court dismiss the complaint. If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ( *quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### G. Conclusion

For the foregoing reasons A judgment in favor of Plaintiff will have no effect on defendants' right to petition state court for redress of grievances, as defendants' cases will not be weakened or abandoned regardless of outcome. Plaintiff has presented prima facie evidence of their claims to show a probability of success. Therefore the Anti-Slapp Motion and Motion to Dismiss should be denied.

Respectfully,

Dated: January 20, 2022        /S/ Gavin: Mehl.

Gavin Mehl, Plaintiff *Pro Se*

Dated: January 20, 2022        /S/ Ron Cupp

Ron Cupp, Plaintiff *Pro Se*

OPPOSITION TO AS TO ANTI-SLAPP MOTION AND MOTION TO DISMISS