Gavin Mehl
5960 S. Land Park Dr. #1166
Sacramento, California 95822
Phone: (917) 304-6089
Email: mehlgavin@gmail.com

Ron Cupp
150 Raley Town Center Ste 2512
Rohnert Park, California 94925
Phone: (707) 318-9929
Email: ronc2009@gmail.com

Consumer Plaintiffs



FILED

OCT 26 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gavin Mehl; Ron Cupp<br><br>                    Plaintiff(s),<br><br>         v.<br><br>PeerStreet; Snell & Wilmer L.L.P.; Andrew B. Still an individual; Wilmington *et al.* and Does 1 through 10 inclusive<br><br>                    Defendant(s). | Case No.: **2:21-cv-01861-TLN-JDP**<br>*Hon. Troy L. Nunley, US District Judge*<br>*Hon. Jeremy D. Peterson, US Magistrate Judge*<br>*Document 41*<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES FOR CONSUMER PROTECTION VIOLATIONS**<br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

1     COMES NOW, Gavin Mehl and Ron Cupp (collectively "Plaintiffs") timely, according

2  to Minute order (Document 42) issued by Courtroom Deputy M. Krueger for Hon Troy L.

3  Nunley September 26, 2022, order (Document 40) adopting Hon. Jeremy D. Peterson's

4  Findings and Recommendations, September 2, 2022 (Document 38) for their Second Amended

5  Complaint ("SAC") against Defendants PeerStreet; Snell & Wilmer L.L.P; Andrew B. Still,

6  Wilmington, *et al.* and Does 1 through 10 (collectively "Defendants"). According to *Fed. R.*

7  *Civ. P.* 15 Plaintiffs rename Defendant PS Funding, Inc., also known as ("aka") PeerStreet,

8  whose "Summons Returned Executed" October 13, 2021 (Document 34).

9     Plaintiffs state this claim against Defendants for violation of the Consumer Protection

10  Laws, including *15 U.S.C.* § 1692, the Fair Debt Collection Practices Act (hereinafter

11  "FDCPA"), California Civil Code ("Cal. Civ. Code") § 1788 et al., the California Rosenthal

12  Fair Debt Collection Practices Act (hereinafter "Rosenthal Act"), and willful non-compliance

13  with *15 U.S.C.* § 1681, the Fair Credit Reporting Act, (hereinafter "FCRA") as follows:

PARTIES, JURISDICTION, AND VENUE

PARTIES

17     1.     Plaintiff Gavin Mehl (hereinafter "Mehl") is a natural person residing in the

18  County of Sacramento, State of California.

19     2.     Plaintiff Ron Cupp (hereinafter "Cupp") is a natural person residing in the County

20  of Sonoma, State of California.

21     3.     Defendant PS Funding, Inc (hereinafter "PeerStreet") is now and was at all times

22  relevant to this action a corporation formed under the laws of the State of Delaware.

2

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

4.      Defendant Snell & Wilmer L.L.P. (hereinafter "Snell & Wilmer") is now and was at all times relevant to this action a Limited Liability Partnership law firm formed under the laws of the State of Arizona.

5.      Defendant Andrew B. Still (hereinafter "Still") is and was at all times relevant to this action, an associate at Snell & Wilmer and a member of the State Bar of California.

6.      Defendant Wilmington Trust, National Association, Not in Its Individual Capacity, But Solely as Trustee of MFRA Trust 2016-1 (hereinafter "Wilmington") is now and was at all times relevant to this action a corporation formed under the laws of the State of Delaware.

7.      Plaintiffs do not know the true names, capacities, basis for liability, or interest of Defendants Does 1 through 10 inclusive and will amend this claim when discovered.

8.      On information and belief, at all times mentioned herein, the Defendants, and each of them, were acting on their own behalf and as the affiliates, agents, servants, partners, joint venturers, or employees of each other, and within the scope of their agency, authority, and employment.

### JURISDICTION AND VENUE

9.      Jurisdiction of this Court arises under *15 U.S.C.* §1692k (d), *15 U.S.C.* §1681p, *15 U.S.C.* §1681n, *15 U.S.C.* §1681o, and *Cal. Civ. Code* § 1788 *et seq*. Supplemental jurisdiction is established for the state law claims per *28 U.S.C.* §1367 (same Plaintiffs, Defendants, actions, and claims). Personal jurisdiction of the Defendants establishes as they all conduct business in the State of California.

SAC for Damages – Consumer Protection                                    Mehl/Cupp V. PeerStreet *et al*

10.   Venue in this District is proper per *28 U.S.C.* §1391b in that the events giving rise to the claim occurred within this judicial district.

PLAINTIFF MEHL BACKGROUND FACTS

11.   On or about June 2020, Mehl rented the Property commonly known as 1400 36th Street in Sacramento, California (the "Property") for personal and household use.

12.   Mehl's residence is subject to the Protecting Tenants at Foreclosures Act (hereinafter "PTFA").

13.   Mehl defaulted on his rent for the Property (hereinafter "debt").

14.   Thereafter, the debt was assigned or transferred to Wilmington, which primarily engages in debt collection.

15.   PeerStreet claims to be an agent of Wilmington.

16.   PeerStreet's principal business is debt collection. PeerStreet openly markets itself as a debt collector on its website at www.peerstreet.com.

17.   PeerStreet and Wilmington retained Defendant Snell & Wilmer and Defendant Still, whose principal business is the collection of debt obligations on behalf of others as advertised on their website at www.swlaw.com/services/foreclosure-and-collection. Defendant Still, an attorney for Snell & Wilmer, represents PeerStreet and Wilmington.

18.   California TD Specialists, as agents for PeerStreet and Wilmington, recorded a Notice of Trustee Sale against the Property on June 8, 2020. The Notice of Trustee Sale states, "California TD Specialists is a Debt Collector attempting to collect a debt."



PATRICIO S. INCE', VICE PRESIDENT

**CALIFORNIA TD SPECIALISTS IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

1    19.    On behalf of PeerStreet and Wilmington, Snell & Wilmer initiated a complaint for

2    unlawful detainer in state court (Sacramento Superior Court Case No. 20UD01465) for

3    possession, statutory damages, and damages equal to the Property's reasonable rental value of

4    $162.66 per day ("First State Complaint").

5    20.    Mehl asserted his rights under the PTFA in the First State Complaint against

6    PeerStreet and Wilmington. PeerStreet and Wilmington agreed to settle in Mehl's favor and

7    dismiss the First State Complaint.

8    21.    Around the same time, PeerStreet and Wilmington reported Mehl to the unlawful

9    detainer registries based on the action of the First State Complaint.

10   22.    Subsequently, Mehl applied to rent a house for a rent relief program and special

11   financing. However, creditors rejected his applications based on information reported about

12   Mehl in the unlawful detainer registries from the First State Complaint, which found Mehl

13   innocent.

14   23.    Mehl subsequently received a dunning letter addressed to Plaintiffs from

15   PeerStreet and Wilmington titled "Demand for Surrender" (hereinafter "Dunning Notice").

16   24.    The Dunning Notice demanded Plaintiffs surrender the Property.

17   25.    PS Funding, Inc., signed the Dunning Notice on behalf of Wilmington, failing to

18   use the debt collector's true name, PeerStreet.

**WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA
TRUST 2016-1, A DELAWARE STATUTORY TRUST**

By: _____

Warren Green, Authorized Signatory of PS Funding, Inc., itself

26.     PeerStreet falsely represented that it was authorized to sign the Dunning Notice on behalf of Wilmington to make demands on Plaintiffs that it was not entitled to make.

27.     The Dunning Notice does not disclose that these Defendants are attempting to collect a debt and omitted the notice required in such letters of the Plaintiffs' right to require debt to be verified per *15 U.S.C.* § 1692g (a)(4).

28.     On June 7, 2021, Mehl notified PeerStreet and Wilmington in writing via FedEx that Mehl disputed the alleged debt. These Defendants were then obligated to cease any further collection activity until the debt was validated per *15 U.S.C.* § 1692g (b).

29.     Despite Mehl giving notice that Mehl disputed the debt and demanded verification, Defendants PeerStreet and Wilmington failed to mark the debt as "disputed" on Mehl's credit report and continued collection by retaining defendants Snell & Wilmer and Still, who initiated a second suit against Plaintiffs Mehl and named Cupp in Sacramento Superior Court (Case No. 21UD01125) ("Second State Complaint") for statutory damages of up to $600, possession of the Property, and damages equal to the reasonable rental value of $162.66 per day.

30.     Defendants demanded of Mehl and Cupp a debt of $59,208.24 (fifty-nine thousand two hundred and eight dollars and twenty-four cents), which PeerStreet and Wilmington admitted during Discovery in the Second State Complaint.

31.     In discovery during the Second State Complaint, though propounded, PeerStreet never provided evidence of authorization or agency to sign the Second State Complaint on behalf of Wilmington.

SAC for Damages – Consumer Protection                          Mehl/Cupp V. PeerStreet *et al*

32.     On August 5, 2021, Mehl notified Lyndsey Torp (hereinafter "Torp"), an attorney for Defendant Snell & Wilmer, in writing via email that Mehl disputed the alleged debt. Snell & Wilmer was then obligated to cease any further collection activity until the debt was validated per *15 U.S.C.* § 1692g (b).

33.     Despite Mehl giving notice that Mehl disputed the debt, Torp of Snell & Wilmer repeatedly placed telephone calls to Mehl's cell phone to collect payment of the disputed charges without disclosing she was attempting to collect a debt.

34.     During each phone call, Mehl advised Torp that he disputed the debt, not to call his emergency cell phone, that the law prohibited her from calling his emergency cell phone, and that he considered the calls to be harassing.

35.     On October 15, 2021, Mehl notified Still in writing via email that Mehl disputed the alleged debt. Still was then obligated to cease any further collection activity until the debt was validated per *15 U.S.C.* § 1692g (b).

36.     Despite Mehl giving notice that Mehl disputed the debt, Defendant Still did not validate the debt and, on October 19, 2021, continued litigation proceedings by requesting to set the First State Complaint for trial and gave notice of motion for summary judgment.

PLAINTIFF CUPP BACKGROUND FACTS

37.     Around October 1, 2021, creditors refused special financing for Plaintiff Cupp. The reason given by the creditors was that there were prior delinquencies on his credit report, and the delinquency was the alleged debt from the Second State Complaint.

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

38.     Around the same time, Mehl notified Cupp that Defendants named Cupp in the Second State Complaint. Although Defendants named Cupp, Defendants never served Cupp a copy of the Second State Complaint.

39.     Under federal and state law, Cupp had a right to dispute the $59,208.24 charges alleged by the Defendants. Accordingly, Cupp notified Defendants in writing that Cupp disputed the alleged debt per *15 U.S.C.* § 1692g.

40.     Defendants were then obliged to stop any further collection activity against Cupp until validating the debt.

41.     However, the Defendants failed to respond and did not mark the debt in dispute on Cupp's credit report. Accordingly, on November 4, 2022, Andrew Still of Snell & Wilmer filed a notice of entry of judgment in favor of Wilmington against Cupp in the Second State Complaint.

## MEHL AND CUPP FCRA BACKGROUND FACTS

42.     On October 7, 2021, Mehl and Cupp each individually notified LexisNexis, Experian, TransUnion, Equifax, and Innovis in writing that the Plaintiffs' credit reports reflected inaccurate information as reported to the unlawful detainer registries.

43.     Plaintiffs individually informed the credit reporting agencies ("CRAs") of a dispute regarding the information furnished by PeerStreet and Wilmington to the Plaintiffs' credit reports.

44.     Based on information and belief, each of the CRAs notified PeerStreet and Wilmington of the Plaintiffs' dispute and asked these Defendants, as the furnisher of the derogatory information, to investigate the dispute as required by the FCRA.

45.     PeerStreet and Wilmington failed to mark the debt in dispute and, based on information and belief, did not conduct an investigation as required by the FCRA.

46.     Around November 2021, the Plaintiffs individually notified the CRAs of their duty to reinvestigate the disputed entries on their respective credit reports, as required under *15 U.S.C.* § 1681i(a) (6).

47.     Based on information and belief, the various CRAs notified PeerStreet and Wilmington of the existence of the Plaintiffs' dispute, which required those Defendants to conduct a reasonable reinvestigation, which they failed to do the first time, and those Defendants took no corrective action.

48.     Therefore, due to PeerStreet's and Wilmington's conduct, the Plaintiffs' credit reports have continued to reflect inaccurate information provided by those defendants.

49.     On October 29, 2021, Defendants filed a motion to dismiss falsely implying that Plaintiffs committed the crime of trespass to disgrace Plaintiffs. *See page 1, line 25, page 9, and line 22 of Defendant's Motion to Dismiss* (Document 7).

50.     Plaintiffs have standing according to Article III of the United States Constitution because they have suffered an injury, in fact, the damage is traceable to the challenged conduct of Defendants' actions described herein, and Plaintiffs' injuries, in particular, are likely to be redressed by a favorable judicial decision in this Court.

51.     Plaintiffs' injuries are, in fact, both particular and concrete because they have suffered an actual violation of a legally protected interest under the PTFA, causing Mehl's dispossession of the Property.

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

52. Plaintiffs lost employment and expended time and energy researching Defendants, the FDCPA, the Rosenthal Act, and the FCRA. In addition, they have spent time and incurred expenses to fix the errors on their consumer credit reports.

53. Plaintiffs had to expend time and energy, incur legal fees and costs, and defend themselves in State court.

54. Plaintiffs have suffered anxiety, headaches, sleep loss, humiliation, and other negative emotions directly caused by Defendants' actions.

55. Defendants acted with willful and malicious intent to injure and cause harm to Plaintiffs.

## FIRST CAUSE OF ACTION

**(Violation of FDCPA, *15 U.S.C.* § 1692 et seq., *Plaintiffs Against all Defendants*)**

56. Plaintiffs allege and incorporate the information in all previous paragraphs.

57. Each of the plaintiffs is a "consumer" within the meaning of *15 U.S.C.* § 1692a(3).

58. The debt arises out of a transaction entered into for personal purposes.

59. Each of the defendants is a "debt collector" within the meaning of *15 U.S.C.* § 1692a (6).

60. Defendants PeerStreet and Wilmington violated the FDCPA as follows:

a) PeerStreet alleged debt due to Wilmington and made threats to take actions that cannot be legally taken in violation of *15 U.S.C.* § 1692e (5);

b) falsely implied that Plaintiffs committed the crime of trespass to disgrace Plaintiffs in violation of *15 U.S.C.* § 1692e (7);

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

c)  communicated credit information that it knew or should have known was false, and failed to communicate that the debt was disputed in violation of *15 U.S.C.* § 1692e (8);

d)  used false representation and deceptive means to attempt to collect a debt in violation of *15 U.S.C.* § 1692e (10);

e)  failed to disclose in the initial written communication with Plaintiffs that they were attempting to collect a debt and that any information obtained would be used for that purpose, and failed to disclose in subsequent communications that the communication is from a debt collector, in violation of *15 U.S.C.* § 1692e (11);

f)  failed to use the true name PeerStreet of the debt collector in violation of *15 U.S.C.* § 1692e (14);

g)  failed to inform Plaintiffs that they could dispute the debt and require Defendants to obtain verification of the debt in violation of *15 U.S.C.* § 1692g (a)(4);

h)  upon a demand to verify the debt by Plaintiffs, failed to cease collection of the debt and to verify the debt in violation of *15 U.S.C.* § 1692g (b);

i)  took nonjudicial action to effect dispossession of the Property from Plaintiffs when there was no present right to possession of the Property claimed as collateral through an enforceable security interest in violation of *15 U.S.C.* § 1692f(6)(A);

61.  Defendants Snell & Wilmer and Still violated the FDCPA as follows:

a)  caused Plaintiff Mehl's cell phone to ring and engaged Mehl in telephone conversations repeatedly and continuously with an intent to annoy, abuse, and harass Mehl in violation of *15 U.S.C.* § 1692d (5);

b)  failure to disclose on the initial oral communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose in violation of *15 U.S.C.* § 1692d (5);

c)  alleged debt due to Wilmington and made threats to take actions that could not be legally taken in violation of *15 U.S.C.* § 1692e (5), 1692e (8), and 1692e (10);

d)  falsely implied that Plaintiffs committed the crime of trespass to disgrace Plaintiffs in violation of *15 U.S.C.* § 1692e (7);

e)  failed to communicate that the debt was disputed in violation of *15 U.S.C.* § 1692e (8);

f)  used false representation and deceptive means to attempt to collect a debt in violation of *15 U.S.C.* § 1692e (10);

g)  upon a demand to verify the debt by Plaintiff(s) failed to cease collection of the debt and verify the debt in violation of *15 U.S.C.* § 1692g (b);

62.  Plaintiffs suffered injury from each of the above-specified violations.

63.  The Defendants' actions were a proximate cause of Plaintiffs injuries.

64.  Plaintiffs are entitled to recover actual damages and a penalty of up to $1,000 for each Plaintiff per Defendant according to *15 U.S.C.* §1692k.

///

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

## SECOND CAUSE OF ACTION

**(Violations of Rosenthal Act, *Cal. Civ. Code* § 1788, *Plaintiffs Against all Defendants*)**

65.   Plaintiffs allege and incorporate the information in all previous paragraphs.

66.   Each of the Plaintiffs is a "debtor" within the meaning of *Cal. Civ. Code* § 1788.2(h).

67.   The "consumer debt" arises from a transaction entered into for personal purposes within the meaning of *Cal. Civ. Code* §1788.2(f).

68.   Each of the Defendants is a "debt collector" within the meaning of *Cal. Civ. Code* § 1788.2(c).

69.   Defendants have damaged Plaintiffs by violations of the Rosenthal Act as follows:

   a)  By placing phone calls without disclosing that Defendants are debt collectors per *Cal. Civ. Code* § 1788.11(b);

   b)  By causing expense to plaintiff Mehl for the phone calls to Mehl's emergency cell phone and misrepresenting to Mehl the purpose of the telephone calls in violation of *Cal. Civ. Code* § 1788.11(c);

   c)  By sending a written communication to the Plaintiffs that did not display the California license number of the collector in at least 12-point type in violation of *Cal. Civ. Code* § 1788.11(f);

   d)  By falsely representing the true nature of their business in violation of *Cal. Civ. Code* § 1788.13(i);

e)  By attempting to collect a consumer debt through judicial proceedings but failing to effect legal service over Plaintiff Cupp in violation of *Cal. Civ. Code* § 1788.15;

f)  By not complying with the provisions of *15 U.S.C.* § 1692b through *15 U.S.C.* § 1692j in violation of *Cal. Civ. Code* § 1788.17.

70.  Plaintiffs suffered injuries from each of the above-specified violations.

71.  Defendants' actions were a proximate cause of Plaintiffs injuries.

72.  Plaintiffs are entitled to recover actual damages and a penalty of up to $1,000 for each Plaintiff per Defendant, according to *Cal. Civ. Code* § 1788.30(b).

### *THIRD CAUSE OF ACTION*

**(Violation of FCRA, *15 U.S.C.* § 1681s-2(b), *Plaintiffs Against PeerStreet and Wilmington*)**

73.  Plaintiffs allege and incorporate the information in all previous paragraphs.

74.  Each of the Plaintiffs is a consumer within the meaning of *15 U.S.C.* §1681a (c).

75.  On information and belief, Defendant PeerStreet and Wilmington, either directly or through their agents, in the ordinary course of business, regularly and on a routine basis furnish information to one or more consumer reporting agencies, as that term is defined by title *15 U.S.C.* § 1681a(f).

76.  On information and belief, each of these Defendants transmitted information concerning a particular debt owed by Plaintiff(s) to the national credit reporting agencies ("CRAs"), making it (PeerStreet and Wilmington) a "furnisher" within the meaning of the FCRA and its implementing regulations. *Id.*; *12 C.F.R.* § 1022.41(c) (defining "furnisher").

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

77. Mehl was denied credit due to the Defendants' inaccurate debt reporting from the First State Complaint.

78. Cupp was denied credit due to the Defendants' inaccurate debt reporting from the Second State Complaint.

79. Plaintiffs each informed the CRAs of a dispute regarding furnished information by Defendants to Plaintiffs credit reports.

80. On information and belief, Defendants were notified by the CRAs of the dispute regarding furnished information; however, they failed to mark the debt in dispute and failed to report the results of the investigation to the CRAs.

81. Plaintiffs and each of them requested reinvestigation with the CRAs.

82. On information and belief, Defendants were notified of the reinvestigation request by the CRAs. However, they failed a second time to mark the debt in dispute and failed to report the results of the investigation to the CRAs.

83. A consumer may sue a furnisher and recover damages if the furnisher willfully or negligently violated FCRA. *15 U.S.C.* §§ 1681n, 1681o; see Syed v. M-I, LLC, 853 F.3d 492, 503 (9th Cir. 2017).

84. Section 623(b)(1)(A) of the FCRA makes it unlawful for a furnisher of information to a CRA upon receiving a notice of a Consumer dispute from the CRA not to conduct a reasonable investigation of the disputed information. *15 U.S.C.* § 1681s-2(b) (See CFPB v Encore Capital Group, Inc., et al., CFPB File N. 2015-CFPB-022 at 124).

85. Based on information and belief, the Consumer Data Industry Association ("CDIA") is a trade association that represents significant institutions, including CRAs. It

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

provides Metro 2 regulatory compliance training workshops and guidance for data furnishers such as our Defendants. In addition, the CDIA issues occasional memos for CRAs.

86.     Defendants knew (or should have known) that in 2015, the CDIA issued a memo whereby the CRAs agreed **that collection agencies** were no longer allowed to report any debts that were **"not the result of a contract or agreement to pay."**

87.     Defendant knew (or should have known) that it was furnishing an item that was "not the result of a contract or agreement to pay" between Plaintiff and ANY entity regarding the alleged account. Defendants knew (or should have known) that at all times relevant, they lacked standing to furnish the item.

88.     Defendants knew (or should have known), according to the FCRA, Sec 623(b)(1)(E), [*15 U.S.C.* § 1681s-2(b)(1)(E)], with subsequent "NOTICE OF DISPUTE" sent to the CRAs, "if an item of information disputed by a consumer is found to be **inaccurate or incomplete or cannot be verified** after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency, only as appropriate, based on the result of the investigation promptly—

            a) Modify the item of information;

            b) Delete that item of information; or

            c) Permanently block the reporting of that item of information

89.     Defendants knew (or should have known) to "review all relevant information provided by the consumer reporting agency according to section 611(a)(2) [1681i]."

90.     *15 U.S.C.* § 1681s-2(a) prohibits furnishers from reporting inaccurate or erroneous information about consumers. As such, it placed an affirmative duty on furnishers

---

16

1    to correct and update information that they know, or reasonably should know, is

2    inaccurate. In addition, the subsection requires furnishers to flag or otherwise provide

3    Notice to CRAs of any "dispute" by a consumer related to their credit information or history,

4    FCRA, *15 U.S.C.* § 1681s-2(a)(1)-(3)._Accordingly, the plaintiffs' consumer credit report is a

5    consumer report within the meaning of *15 U.S.C.* §1681a(d).

6        91.    The FCRA, *15 U.S.C.* 1681s-2(b), has Obligations regarding credit furnishers to

7    investigate consumer disputes. In addition, subsection 1681s-2(b) specifies a second set of

8    obligations on a furnisher. These obligations are triggered once a CRA notifies the furnisher

9    that it has received a "notice of dispute" from the consumer according to *15 U.S.C.* § 1681s-

10   2(a)(2). After a CRA receives the disputes from a consumer, it, in turn, is required under §

11   1681i of the FCRA to forward a consumer dispute verification (CDV) form to the

12   furnisher, requiring it to verify the credit information and investigate its accuracy.

13       92.    After receiving Notice of such a dispute from a CRA, a furnisher has five

14   mandatory duties it must perform within 30 days:

15           a) to conduct "an investigation" with respect to the disputed information;

16           b) to "review all relevant information" provided by the CRA;

17           c) to "report the results of its investigation" back to the CRA;

18           d) if the investigation finds the existing information is incomplete or inaccurate,

19              to report back those results to each of the CRAs to whom the furnisher

20              originally communicated information about the consumer; and

21           e) to "modify, . . .delete. . .or. . .permanently block" the reporting of any item of

22              information found to be inaccurate, incomplete, or which cannot be verified as

---

17

1    accurate after a reinvestigation. *15 U.S.C.* § 1681s-2(b)(1).

2    93.   In §1681s-2(b), duties arise only after a furnisher receives a Notice of dispute

3    from a CRA. Notice of a dispute to a furnisher by a consumer directly does *not* trigger a

4    furnisher's duty to reinvestigate under §1681s-2(b). The consumer must dispute to a CRA,

5    which, in turn, forwards the dispute to the furnisher. This indirect "filtering" mechanism

6    must be followed by a consumer to give rise to a duty of investigation *under the FCRA* to

7    the furnisher. A furnisher need not honor a dispute received directly from the consumer,

8    whether oral or written, under the FCRA. *Such a dispute, it should be noted, does create a*

9    *legal obligation under §1692g of the FDCPA,* which Plaintiff served upon the defendants.

10   94.   Plaintiff(s) notified Defendants of its dispute in writing multiple times. However,

11   Defendants failed to correct or delete information found to be inaccurate and erroneous and

12   or failed to investigate Plaintiff(s) disputes properly and continued to attempt to collect a debt.

13   95.   Plaintiff(s) further notified the CRAs of its heightened duty and obligation for the

14   furnisher to reinvestigate, who notified Defendants on information and belief. Plaintiff alleges

15   that at all relevant times, Defendant failed to maintain and follow reasonable procedures to

16   assure the maximum possible accuracy of Plaintiff's credit report concerning the account in

17   question, violating *15 U.S.C.* § 1681e(b). Accordingly, Plaintiff alleges that Defendants

18   failed to conduct a proper and lawful reinvestigation.

19   96.   Defendants knew that the debt was disputed and reporting prior delinquencies

20   when Plaintiff(s) applied for credit was incorrect and, more importantly, **inaccurate.**

21   97.   Defendants should have corrected the credit reports, thus only providing accurate

22   and complete information.

98.     Plaintiff(s) were denied credit for information contained in the CRA reports. All actions taken by the Defendants thru the CRAs were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FCRA and state law and/or that knew or should have known that their actions were in reckless disregard of the FCRA and state law. Therefore, Defendants and each of their acts constitute multiple willful non-compliance with FCRA.

99.     Defendants violated the FCRA *15 U.S.C.* §1681s-2(b) by continuing their representation within Plaintiff's credit file with all CRAs without also including a notation that this debt was disputed; by failing to fully and adequately investigate Plaintiff's dispute of the Defendant's representation by failing to review all relevant information regarding same; by failing to respond to the CRAs accurately; by failing to correctly report results of a proper investigation to every other CRA; and by failing to permanently and lawfully correct its internal records to prevent the re-reporting of the Defendant's representations to the CRAs.

100.    Defendants knew (or should have known) that **any person** who fails to comply with **any requirement** imposed under the FCRA concerning **any consumer** is liable to that consumer. (Emphasis added). Defendants, and each of them, at all times relevant herein, were the principles, agents' employers, and employees and ratified or approved of the acts or omissions alleged herein concerning the willful and negligent violations of the FCRA and were acting in the course and scope of the authority's such principals, agents, employers, and employees.

101. Plaintiff's letters demanding reinvestigation conferred a known duty and obligation on the defendants. Nevertheless, the defendants continued to report inaccurate information to the CRAs, certifying that the information was accurate to each CRA.

102. Defendants willfully and negligently failed to correct the erroneous and inaccurate credit information and continued to collect a debt in direct violation of the FCRA.

103. As a result of this conduct, action, and inaction of Defendants, Plaintiff suffered harm, as described above, including credit denial damages.

104. Defendants willfully and negligently failed to comply with their duty to investigate Plaintiff's disputes under *15 U.S.C.* § 1681(n) & (o).

105. As a result of this conduct, action, and inaction of the defendants, Plaintiff(s) and each of them suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and inaccurate CRA reporting's too general public.

106. Defendant's conduct, action, and inaction were willful, rendering it liable for actual, statutory, and punitive damages in an amount determined by the Court according to *15 U.S.C.* §1681n. In the alternative, it was negligent, entitling Plaintiff to recover actual damages under *15 U.S.C.* §1681o.

107. Plaintiffs are entitled to recover actual damages and statutory damages according to *15 U.S.C.* §1681n; $1,000 for each month of inaccurate reporting to each CRA for each Plaintiff and punitive damages.

///

///

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff(s) prays for relief as follows:

1) Damages according to proof as authorized by law;

2) Punitive damages and statutory penalties;

3) Costs and reasonable attorney fees, according to *15 U.S.C.* §1692k, *Cal. Civ. Code* § 1788.30(c) and *15 U.S.C.* §1681n;

4) Interest;

5) Such other and further relief as may be just and proper;

6) If pleadings have not shown a prima facie case and are correctable by amendment, leave of Court to amend or leave for a more definite statement in the alternative.

Dated: October 26, 2022,          /S/: Gavin: Mehl.          /S/ Ron Cupp

                                  Gavin Mehl          Ron Cupp

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*

## PROOF OF ELECTRONIC SERVICE

I am over the age of 18 years old.

My residence or business address is 5960 S Land Park Drive #1166,

Sacramento, California 95822.

My electronic service address is:  mehlgavin@gmail.com

I electronically served the documents (exact titles):

## SECOND AMENDED COMPLAINT FOR DAMAGES FOR

## CONSUMER PROTECTION VIOLATIONS

Names and electronic service addresses of persons served:

Eric Pezold epezold@swlaw.com

Andrew Still astill@swlaw.com

I Declare under penalty of perjury under the laws of the United States of America that the

above is true and correct.

Dated: October 26, 2022                    /S/: Gavin: Mehl.

                                                        _____

                                                        Gavin Mehl

---

SAC for Damages – Consumer Protection                    Mehl/Cupp V. PeerStreet *et al*