1 | Eric S. Pezold, Bar No. 255657
epezold@swlaw.com
2 | Andrew B. Still, Bar No. 312444
astill@swlaw.com
3 | SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
4 | Costa Mesa, California 92626-7689
Telephone:   714.427.7000
5 | Facsimile:   714.427.7799

6 | *Attorneys for Defendants*

7

8 | UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

9

10 | GAVIN MEHL; RON CUPP; and DOES 1-10
inclusive consumers,

11 |       Plaintiffs,

12 | v.

13 |

14 | WILMINGTON TRUST, NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS TRUSTEE
15 | OF MFRA TRUST 2016-1, A DELAWARE
STATUTORY TRUST; SNELL & WILMER
16 | L.L.P.; ANDREW B. STILL an individual, and
DOES 1-10 inclusive,

17 |       Defendants.

Case No. 2:21-CV-01861-TLN-JDP

**DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(6);
MEMORANDUM OF POINTS AND
AUTHORITIES**

Hearing Information:
Date:      January 12, 2023
Time:      10:00 a.m.
Courtroom: 9
Address:   501 I Street
          Sacramento, CA 95814

20 |     TO THE COURT AND ALL PARTIES:

21 |     PLEASE TAKE NOTICE that on January 12, 2023, at 10:00 a.m., or as soon thereafter as

22 | the matter may be heard, in Courtroom 9 of the above-entitled court, located at 501 I Street,

23 | Sacramento, CA 95814, Defendants Wilmington Trust, National Association, not in its Individual

24 | Capacity, but Solely as Trustee of MFRA Trust 2016-1, a Delaware Statutory Trust

25 | ("Wilmington"), PeerStreet, Inc. and PS Funding, Inc.,[1] Snell & Wilmer L.L.P. ("Snell & Wilmer")

---

[1] In their initial complaint, Plaintiffs named both PeerStreet, Inc. and PS Funding, Inc. as defendants. [ECF No. 1]. In
their First Amended Complaint, Plaintiffs removed both PeerStreet, Inc. and PS Funding, Inc. as party defendants.
[ECF No. 16]. In the instant SAC, Plaintiffs have re-named "PS Funding, Inc." as a defendant, with "PeerStreet" as
the defined term therefor. Out of an abundance of caution, both PeerStreet, Inc. and PS Funding, Inc., who are
collectively referred to herein as "PSF," join in this Motion to Dismiss.

1  and Andrew B. Still[2] (collectively "Defendants") will, and hereby do move pursuant to Federal

2  Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint for Damages for

3  Consumer Protection Violations [ECF No. 43] ("SAC") of Plaintiffs Gavin Mehl and Ron Cupp

4  ("Plaintiffs") on the grounds that the SAC and all claims for relief stated therein fail to state

5  sufficient facts to state a claim upon which relief can be granted.[3]

6  First, Plaintiffs' claims for Violation of the Fair Debt Collection Practices Act, 15 U.S.C.

7  § 1292 *et seq.*, ("FDCPA") and Violation of the Rosenthal Fair Debt Collection Practices Act, Cal.

8  Civ. Code § 1788 *et seq.*, ("Rosenthal Act") fail because Plaintiffs have not and cannot allege facts

9  to establish that there is a debt owed by Plaintiffs, that there was a transaction between the parties,

10  or that Defendants are debt collectors as defined under either statute. Indeed, to accept Plaintiffs'

11  allegations that they are "consumers," that there is a "debt" or that there ever was a "transaction,"

12  as those terms are defined by the FDCPA, would require this Court to ignore several rulings of the

13  Sacramento Superior Court ("State Court"). Specifically, the State Court found Plaintiffs liable for

14  *forcible* detainer when they broke into Wilmington's property. In making this finding, the State

15  Court has already adjudicated that there was never any voluntary transaction between the parties,

16  and that Plaintiffs never had any right to occupy the property for which the "back rent" is allegedly

17  owed—the alleged particular debt at issue that is central to Plaintiffs' claims. Moreover, this Court

18  has already declined to exercise supplemental jurisdiction over Plaintiffs' Rosenthal Act claim and

19  did not authorize Plaintiffs leave to amend this claim.

20  Second, the claim for Violation of the Federal Fair Credit Reporting Act ("FCRA"),

21  15 U.S.C. § 1681s-2(b), fails because Defendants are not furnishers of information and, even if they

22  were, no credit reporting agency provided Defendants notice of a consumer dispute. Again,

23  accepting Plaintiffs' allegations as true would require the Court to ignore judicially noticeable facts

24  that patently contradict Plaintiffs' claims.

25  Accordingly, Defendants respectfully request that this Court grant the Motion to Dismiss

26  without leave to amend on the grounds that amendment would be futile, Plaintiffs have acted in

27

28

---

[2] Snell & Wilmer and Mr. Still are referred to herein collectively as the "Attorney Defendants."

[3] It should also be noted at the outset that Plaintiffs failed to properly serve Defendants pursuant to FRCP 4. For instance, no proof of service has been issued or returned executed as to Mr. Still.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   bad faith and have already had multiple opportunities to amend their pleadings.

2       This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

3   Authorities appended hereto, the Request for Judicial Notice submitted concurrently herewith, the

4   pleadings and papers on file in this action, and any other matters that may properly come before

5   this Court.

6

7   Dated: November 9, 2022                    SNELL & WILMER L.L.P.

8

9                                    By:   */s/ Eric S. Pezold*

10                                          Eric S. Pezold
                                            Andrew B. Still

11                                          Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 8

II.   STATEMENT OF FACTS ......................................................................................... 9

    A.    The Underlying Litigation.................................................................................. 9

    B.    Plaintiffs' Instant Lawsuit .............................................................................. 12

III.  LEGAL ARGUMENT ............................................................................................. 13

    A.    The First Claim for Relief: The FDCPA is not Applicable to Plaintiffs'
          Case as a Matter of Law.................................................................................. 14

          1.    Plaintiffs are not "Consumers" and There is no "Debt" or
                 "Transaction" at Issue, as Defined under the FDCPA .............................. 15

          2.    Defendants are not "Debt Collectors" under the FDCPA ......................... 17

    B.    Plaintiffs Cannot State A Claim Under the Rosenthal Act ................................... 19

    C.    The FCRA is not Applicable to Plaintiffs' Case as a Matter of Law.................... 20

          1.    Plaintiffs' FCRA Claim Must Be Dismissed Because Defendants
                 are Not Furnishers of Information.......................................................... 21

          2.    Plaintiffs' § 1681s-2(b) Claim Must Be Dismissed Because no
                 Credit Reporting Agency Provided Notice of Consumer Dispute .............. 23

    D.    Plaintiffs are Collaterally Estopped from Basing Their Claims on Unpaid
          Rent on Account of a Non-Existent Lease for the Property................................. 25

    E.    Leave to Further Amend Should be Denied........................................................ 26

          1.    Amendment of Plaintiffs' Claims Would be Futile ................................. 26

          2.    Plaintiffs' Bad Faith Warrants Dismissal Without Leave to Amend......... 27

          3.    Plaintiffs' Have Previously Amended.................................................... 28

IV.   CONCLUSION ....................................................................................................... 28

SNELL & WILMER

L.L.P.

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**CASES**

5

*Alkan v. Citimortgage, Inc.*,
  336 F.Supp.2d 1061 (N.D. Cal. 2004) ................................................ 19

6

*Arikat v. JP Morgan Chase & Co.*,
  430 F. Supp. 2d 1013 (N.D. Cal. 2006) .............................................. 24

7

*Beauvoir v. Israel*,
  794 F.3d 244 (2d Cir. 2015)................................................................ 15

8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................... 13, 14

9

*Callahan v. Equifax Info. Servs*. LLC,
  2013 WL 5503949 (N.D. Cal. Oct. 3, 2013)....................................... 22

10

*Carney v. Experian Info. Solutions, Inc.*,
  57 F. Supp. 2d 496 (W.D. Tenn. 1999)............................................... 22

11

*Cook v. Hamrick*,
  278 F.Supp.2d 1202 (D. Colo. 2003) .................................................. 18

12

*Emrich v. Touche Ross & Co.*,
  846 F.2d 1190 (9th Cir. 1988)............................................................. 13

13

*Fleming v. Pickard*,
  581 F.3d 922 (9th Cir. 2009)......................................................... 15, 16

14

*Hamilton v. US Bank, N.A.*,
  2011 U.S. Dist. LEXIS 136493 (S.D. Cal. Nov. 28, 2011) ................. 18

15

*Harris v. County of Orange*,
  682 F.3d 1126 (9th Cir. 2012)............................................................. 14

16

*Heintz v. Jenkins*,
  514 U.S. 291 (1995) ..................................................................... 15, 18

17

*Heras v. Nelnet, Inc.*,
  2017 WL 4586334 (C.D. Cal. Apr. 28, 2017) .................................... 22

18

*Heritage Pacific Financial, LLC v. Monroy*,
  215 Cal.App.4th 972 (2013) ............................................................... 15

19

*In re Daou Systems, Inc.*,
  411 F.3d 1006 (9th Cir. 2005)............................................................. 26

20

*Ines v. Countrywide Home Loans*,
  2008 WL 4791863 (S.D. Cal. Nov. 3, 2008) ...................................... 18

21

*Intri-Plex Tech., Inc. v. Crest Group, Inc.*,
  499 F.3d 1048 (9th Cir. 2007)............................................................. 14

22

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
  186 F.Supp.3d 1014 (N.D. Cal. 2016) ........................................... 15, 16

23

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000)............................................................. 26

24

*Lorenzo v. SEC*,
  __ U.S. __, 139 S.Ct. 1094 (2019)...................................................... 25

25

*McFadden v. Deutsche Bank Nat'l Trust Co.*,
  2011 U.S. Dist. LEXIS 91010 (E.D. Cal. Aug. 15, 2011) .................. 18

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Molina v. Synchrony Bank/Walmart*,
  No. EDCV171464JGBJEMX, 2018 WL 2721903 (C.D. Cal. Apr. 17, 2018) ......................... 23

*National Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) .......................................................................................... 26

*Nelson v. Chase Manhattan Mortg. Corp.*,
  282 F.3d 1057 (9th Cir. 2002) .......................................................................................... 24

*Oyeniran v. Holder*,
  672 F.3d 800 (9th Cir. 2012) ............................................................................................ 24

*Peasley v. Verizon Wireless (VA W) LLC*,
  364 F.Supp.2d 1198 (S.D. Cal. 2005) ............................................................................... 23

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) ............................................................................................ 26

*Rieger v. Am. Exp. Co.*,
  No. C 11-4202 MEJ, 2011 WL 5080188 (N.D. Cal. Oct. 25, 2011) ................................. 23

*Romine v. Diversified Coll. Servs.*,
  155 F.3d 1142 (9th Cir. 1998) .......................................................................................... 18

*Shaw v. Hahn*,
  56 F.3d 1128 (9th Cir. 1995) ............................................................................................ 13

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) .......................................................................................... 13

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) .......................................................................................... 16

*U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*,
  971 F.2d 244 (9th Cir. 1992) ............................................................................................ 14

*U.S. v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ....................................................................................... 26, 27

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................................................................ 13

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ............................................................................................ 14

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) .......................................................................................... 25

**STATUTES**

15 U.S.C. § 1681 ...................................................................................................................... 20
15 U.S.C. § 1681(f) .................................................................................................................. 21
15 U.S.C. § 1681i(a)(2) ............................................................................................................ 24
15 U.S.C. § 1681s-2(b) ........................................................................................... 9, 20, 23, 24
15 U.S.C. § 1692(e) ................................................................................................................. 15
15 U.S.C. § 1692a(6) ............................................................................................................... 17
15 U.S.C. § 1692e ................................................................................................................... 15
15 U.S.C. § 1692k ................................................................................................................... 19
15 U.S.C. §§ 1692b–1692j ...................................................................................................... 19
15 U.S.C.A. § 1692a(3) ........................................................................................................... 15

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Civ. Code § 1788 ................................................................................................................ 19, 20

Cal. Civ. Code § 1788.17 .................................................................................................................. 19

Cal. Civ. Code § 1788.2 .................................................................................................................... 20

Cal. Code Civ. Proc. § 1160 .............................................................................................................. 10

**RULES**

Fed. R. Civ. P. 12(b) ........................................................................................................................ 13

Fed. R. Civ. P. 15(a)(2) .................................................................................................................... 25

Fed. R. Civ. P. 4 ................................................................................................................................. 2

Fed. R. Civ. P. 8 ............................................................................................................................... 13

Fed. R. Civ. P. 8(a)(2) .................................................................................................................. 13, 18

SNELL & WILMER

L.L.P.

LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs' claims are a fiction and are not based in reality. Rather, they are part of a larger scheme to frustrate and interfere with Wilmington's forcible detainer lawsuit against Plaintiffs in State Court and possession of the residential property located at 1400 36th Street, Sacramento, CA ("Property"). Over a year ago, the State Court entered judgment against Plaintiffs for *forcible* detainer, specifically finding that Plaintiffs broke in and took possession of the Property, which belongs to Wilmington, without any valid claim or right to do so, and continually failed and refused to vacate despite Wilmington's demands. In entering judgment in favor of Wilmington, the State Court expressly found that Plaintiffs never had any authority to occupy the Property, let alone a lease related to the Property. There is thus no privity of contract between the parties; there was never a voluntary transaction between the parties, let alone a consumer transaction, as required under the laws on which Plaintiffs' claims are based; nor is there any "debt" owed by Plaintiffs to Wilmington. Indeed, to the extent any amounts are owed by Plaintiffs to Wilmington, collection for which has never been attempted, let alone litigated or adjudicated, such "debt" would *only* be associated with Plaintiffs' unauthorized, tortious, forcible detention of the Property for nearly two years.

Based on this categorically false and judicially controverted allegation of unpaid "rent," Plaintiffs have filed their SAC, alleging claims for violations of the FDCPA and the FCRA. Plaintiffs also allege a claim under the Rosenthal Act, despite the fact that the Court has already declined to exercise supplemental jurisdiction over this claim. These claims are fabricated, deceitful and constitute not only a waste of judicial resources but a mockery of state and federal laws. Accordingly, Plaintiffs' SAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) Plaintiffs' FDCPA claim fails because there is no "debt" and Plaintiffs are not "consumers" as contemplated under the Act, there has been no "transaction" between the parties, let alone a voluntary consumer transaction, and Defendants are not "debt collectors" as defined under the FDCPA; (2) the Court has already declined to exercise supplemental jurisdiction over the Rosenthal Act claim and, to the extent the Court exercises supplemental jurisdiction, the Rosenthal

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

Act claim fails on the same grounds as the FDCPA claim; and (3) Plaintiffs' FCRA claim fails because Defendants are not furnishers of information and, even if they were, Plaintiffs cannot state a claim under 15 U.S.C. § 1681s-2(b) because no credit reporting agency provided Defendants notice of a consumer dispute; and, moreover, because accepting Plaintiffs' allegations as true would require the Court to ignore judicially-noticeable facts that patently contradict Plaintiffs' claims.

While the Court must treat all well-pleaded allegations as true on a motion to dismiss, it need not treat as true those facts that are directly contradicted by facts that are subject to judicial notice. This is especially true where, as here, Plaintiffs' claims are unequivocally controverted by multiple orders and judgments of the State Court. Under this rubric, Plaintiffs have not—and cannot—state a claim upon which relief can be granted, despite being given multiple opportunities to do so, and the SAC should be dismissed without leave to amend.

## II.    STATEMENT OF FACTS

### A.    The Underlying Litigation

On July 2, 2020, Wilmington acquired title at a trustee's sale to a single-family residence commonly described as 1400 36th Street, Sacramento, California (the "Property"). [Request for Judicial Notice ("RJN"), Ex. 8 (Order Granting Plaintiff's Motion for Summary Judgment entered Oct. 26, 2021, by the State Court in Case No. 21UD01125 (hereafter the "MSJ Order"), 2:19-21)]. The underlying borrower and former owner of the Property was Ikon Homes, Inc. ("Ikon"), a third-party not related to Plaintiffs in any manner whatsoever. [*Id.*, 2:23-25]. When Wilmington obtained the Property, Ikon "did not have any agreements, oral or written, to lease the Property[.]" [*Id.*, 2:24-25].

On October 28, 2020, Wilmington filed its Complaint for Unlawful Detainer against Ikon and all other occupants, State Court Case No. 20UD01465. [SAC, ¶ 19; RJN Ex. 1]. On April 26, 2021, in response thereto, Plaintiff Gavin Mehl filed a prejudgment claim of right to possession. [RJN, Ex. 2 (Prejudgment Claim of Right to Possession)]. Once Wilmington discovered that the there was no privity of contract between Ikon and Mehl, that Plaintiffs had no basis whatsoever to occupy the Property and in fact broke into the Property after Wilmington had taken possession, it

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    dismissed the unlawful detainer action so that it could pursue a forcible detainer action. [RJN, Ex.

2    3 (Request for Dismissal)].

3          Therefore, on May 24, 2021, Wilmington served Plaintiffs with a written demand to

4    surrender the Property. [RJN, Ex. 8 (MSJ Order, 5:7-12); *see also* RJN, Ex. 5 (First Amended

5    Verified Complaint for Forcible Detainer, Ex. 2)]. Pursuant to the Demand for Surrender, which

6    Plaintiffs deceitfully refer to as a "Dunning Notice" in their SAC, Wilmington demanded surrender

7    of the Property. [*Id.*] The Demand for Surrender provides:

8              Demand is hereby made upon you by the undersigned that you
               immediately surrender possession of the real property located at
9              1400 36th St., Sacramento, California 95816. Unless you do so,
               having unlawfully entered, you will be subject to legal action.
10

11   [*Id.*] Despite Plaintiffs' allegations that the Demand for Surrender was a "Dunning Notice" seeking

12   payment of a "disputed debt," the Demand for Surrender was made pursuant to California Code of

13   Civil Procedure section 1160 and, as the State Court found, was made because of Plaintiffs'

14   "unlawful entry and occupancy" of the Property. [RJN, Ex. 8 (MSJ Order, 5:9)].

15         After service of the Demand for Surrender and expiration of the statutory five-day period,

16   on June 14, 2021, Wilmington, through its counsel, Defendant Snell & Wilmer, filed a forcible

17   detainer action in the State Court, captioned *Wilmington Trust, National Association, Not in Its*

18   *Individual Capacity, But Solely as Trustee of MFRA Trust 2016-1, a Delaware Statutory Trust v.*

19   *Gavin Mehl, et. al,* Case No. 21UD01125 (the "Forcible Detainer Action"). [SAC, ¶ 29; RJN, Exs.

20   4-5 (Complaint and First Amended Complaint in Forcible Detainer Action)]. In the Forcible

21   Detainer Action, Wilmington alleged, and the State Court ultimately found, that approximately one

22   month after Wilmington took possession of the Property from the prior owner (third-party Ikon),

23   Plaintiffs unlawfully entered, forcibly detained, and refused to vacate the Property despite

24   Wilmington's demands. [*See id.*; *see also* RJN, Ex. 8 (MSJ Order, pp. 3-5)].

25         Plaintiff Mehl then implemented an abusive litigation strategy by unleashing a barrage of

26   frivolous motions and filings. Mehl filed a motion to dismiss, a demurrer, a motion to strike and a

27   motion to reclassify, all of which were denied as being without legal basis. [RJN, Exs. 6-7 (State

28   Court Orders)].

SNELL & WILMER

L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    On October 19, 2021, Wilmington filed its Motion for Summary Judgment in the Forcible
2    Detainer Action, which the State Court granted on October 26, 2021. [RJN, Ex. 8 (MSJ Order)].
3    The State Court thereafter entered judgment in the Forcible Detainer Action in favor of Wilmington
4    and against all defendants and occupants thereof—including Plaintiffs herein—ruling that
5    Wilmington is entitled to possession of the Property and that its judgment applies to all occupants
6    of the Property. [*Id.*; *see also* RJN, Ex. 9 (Notice of Entry of Judgment)]. On November 8, 2021,
7    the Clerk of the State Court issued its Writ of Possession. [RJN, Ex. 10 (Writ of Possession)].

8    Issuance of the Writ of Possession did not deter Plaintiffs' unmeritorious filings in State
9    Court. On November 22, 2021, Plaintiff Mehl filed his Motion for New Trial. [*See* RJN, Ex. 17
10   (Order Denying Motion for New Trial)]. The next day, the day prior to Thanksgiving, Mehl filed
11   his *Ex Parte* Motion for Stay of Execution Pending Writ of Mandate, seeking to advance the hearing
12   on the Motion for New Trial and to stay enforcement of the judgment through the adjudication of
13   such motion.  [*See* RJN, Ex. 14 (Order Denying *Ex Parte* Application to Stay Writ of Possession)].
14   Just minutes before the hearing on the Motion for New Trial on November 30, 2021, which the
15   State Court advanced pursuant to Mehl's request, Mehl removed the Forcible Detainer Action to
16   this Court, commencing Case No. 2:21-cv-02201-JAM-JDP. [RJN, Ex. 12 (Notice of Removal)].
17   The basis for the erroneous removal was federal question jurisdiction, diversity jurisdiction and
18   civil rights removals and injunctions. [*Id.*] In his Notice of Removal, Mehl attached the complaint
19   and his answer in the Forcible Detainer Action, and represented to the Court that those pleadings,
20   along with the summons and civil case cover sheet, constitute "all process, pleadings, and orders in
21   the State Court Action." [*Id.*, (Notice of Removal ¶ 3)]. Mehl did not attach, among other things,
22   the State Court's orders denying his motion to strike, demurrer or motion to dismiss. [*See id.*] Mehl
23   did not attach the State Court's MSJ Order. [*Id.*] Worse yet, Mehl did not attach the judgment
24   entered by the State Court or the Writ of Possession. [*Id.*]

25   On December 2, 2021, this Court entered its *Sua Sponte* Order Remanding Action to State
26   Court. [RJN, Ex. 13 (Remand Order)].[4] Following remand, the State Court entered its *Sua Sponte*

27
28   [4] While not a party to this action, it should also be noted that following the Remand Order issued by this Court, John Mehl, another former occupant of the Property and defendant in the Forcible Detainer Action, reopened his 2018 bankruptcy case and removed the Forcible Detainer Action to Bankruptcy Court. [RJN, Ex. 15 (Notice of Removal)].

Order Denying Mehl's Ex Parte Application to Stay the Writ of Possession. [RJN, Ex. 14 (State Court Order entered Dec. 3, 2021)]. In its Order, the State Court noted that continuing any sort of stay "would be unwise given [Mehl's] lack of good faith ...." and that Mehl has "weaponized" the legal process to obfuscate and delay his removal from the Property. [*Id.*][5] The Sacramento County Sheriff thereafter levied the Writ of Possession and removed the Plaintiffs, along with their compatriots, from the Property. [RJN, Ex. 16 (Return of Writ of Possession executed by Sacramento County Sheriff on Dec. 9, 2021)]. On December 13, 2021, the Superior Court denied Mehl's Motion for New Trial. [RJN, Ex. 17 (Order Denying Motion for New Trial)].

**B.**    **Plaintiffs' Instant Lawsuit**

On October 8, 2021, during the pendency of the Forcible Detainer Action, Plaintiffs filed the instant action, asserting claims for violations of the FDCPA, the Rosenthal Act, the Telephone Consumer Protection Act ("TCPA"), and for Intentional Infliction of Emotional Distress and Injunctive Relief. [ECF No. 1]. On October 29, 2021, Defendants filed their Motion to Strike Complaint Pursuant to Cal. Code. Civ. Proc. § 425.16 and to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6). [ECF No. 7]. At Plaintiffs' request, on November 19, 2021, the parties stipulated to allow Plaintiffs an extension of time to file a first amended complaint. [ECF No. 14].

On December 3, 2021, Plaintiffs filed their First Amended Complaint for Damages and for Injunctive Relief for Violation so the FDCPA, the Rosenthal Act, the FCRA and the TCPA ("FAC"). [ECF No. 16]. On December 17, 2021, Defendants filed their Motion to Strike First Amended Complaint Pursuant to Cal. Code. Civ. Proc. § 425.16 and to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6). [ECF No. 18]. On September 2, 2022, this Court entered its Findings and Recommendations regarding Defendants' Motion to Dismiss (ECF No. 38) and, on September 26, 2022, this Court entered its Order granting Defendants' Motion to Dismiss. [ECF No. 40]. Pursuant to the Court's Order, leave to amend was granted as to the claims brought under the FDCPA, the

---

The Notices of Removal filed by Messrs. Mehl are nearly identical. The Bankruptcy Court likewise remanded to the State Court. [RJN, Ex. 18.]

[5] The foregoing does not constitute the entirety of Mehl's abusive litigation tactics in the Forcible Detainer Action. Mehl also sought to disqualify the Superior Court judge from hearing his Motion for New Trial, which was summarily denied. [RJN, Ex. 11 (Order Striking Statement for Disqualification)]. Mehl has even commenced a recall petition of the Superior Court judge assigned to the Forcible Detainer Action. [RJN, Ex. 19.]

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  FCRA and the TCPA; however, the Court declined to exercise supplemental jurisdiction over

2  Plaintiffs' Rosenthal Act claim. [*Id.*]

3      Plaintiffs' instant SAC followed, whereby they have asserted claims for violations of the

4  FDCPA, the Rosenthal Act and the FCRA. [ECF No. 43].

5  **III.   LEGAL ARGUMENT**

6      Rule 12(b)(6) of the Federal Rules of Civil Procedure authorize a defendant to assert by

7  motion its defense for failure to state a claim upon which relief can be granted. When considering

8  a Rule 12(b)(6) motion, which tests the legal sufficiency of a complaint, a court also reviews

9  compliance with Rule 8. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Rule 8 requires "a

10  short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2).

11  The Supreme Court in *Twombly* held that satisfying Rules 8(a)(2) and 12(b)(6) requires a plaintiff

12  "to provide the grounds of his entitlement for relief [which] requires more than labels and

13  conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly,*

14  550 U.S. at 555 (citation omitted.) To survive a motion to dismiss, "factual allegations must be

15  enough to raise the right to relief above the speculative level." *Id.* Courts considering a motion to

16  dismiss are not bound by a complaint's legal conclusions, deductions and opinions couched as facts.

17  *Id.* Moreover, under *Twombly*, such fundamental deficiencies "should be exposed at the point of

18  minimum expenditure of time and money by the parties and the Court." *Id.* at 558.

19      Typically, if a court relies on materials outside the pleadings in ruling on a motion to

20  dismiss, it must treat the motion as a motion for summary judgment. *United States v. Ritchie,* 342

21  F.3d 903, 907 (9th Cir. 2003). A "court may, however, consider certain materials -- documents

22  attached to the complaint, documents incorporated by reference in the complaint, or matters of

23  judicial notice -- without converting the motion to dismiss into a motion for summary judgment."

24  *Id.* at 908. Those matters that are properly subject to judicial notice may be considered by the Court

25  when ruling on a motion to dismiss. *See, e.g., Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005,

26  1016, fn. 9 (9th Cir. 2012); *Shaw v. Hahn*, 56 F.3d 1128, 1129 fn. 1 (9th Cir. 1995). Judicially

27  noticed facts often consist of matters of public record, such as prior court proceedings. *See, e.g.,*

28  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). Federal courts may "take notice

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4886-1111-9421                                    - 13 -

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   of proceedings in other courts, both within and without the federal judicial system, if those

2   proceedings have a direct relation to the matters at issue." *U.S. ex rel Robinson Rancheria Citizens*

3   *Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also Harris v. County of Orange*,

4   682 F.3d 1126, 1132 (9th Cir. 2012) (the Court "may take judicial notice of undisputed matters of

5   public record, including documents on file in federal or state courts."). Critically, the Court need

6   not accept as true allegations that contradict facts that may be judicially noticed. *Von Saher v.*

7   *Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *see also, e.g., Intri-*

8   *Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

9       Here, Plaintiffs clearly fail to meet the pleading requirements of Rules 12(b)(6) and 8(a)(2).

10  The SAC contains nothing more than a jumble of unsupported allegations, lumped together

11  indiscriminately against multiple defendants without differentiation of which particular allegations

12  are made against which defendants. The resulting hodge-podge is neither "a short and plain

13  statement of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2), nor a set of

14  "factual allegations . . . enough to raise the right to relief above the speculative level" under

15  *Twombly*. Worse yet, while the Court must treat all well-pleaded allegations as true on a motion to

16  dismiss, it need not treat as true those facts that are directly contradicted by facts that are subject to

17  judicial notice, including the State Court's multiple orders and judgment controverting the facts

18  alleged in Plaintiffs' SAC. Specifically, the critical and necessary allegations required under the

19  FDCPA and FCRA are unequivocally controverted by the State Court's findings and rulings that

20  there was never any contractual or other relationship between Plaintiffs and the Defendants, that

21  Plaintiffs broke into the Property and forcibly detained it, and that they never had any leases related

22  to the Property or any right to possession whatsoever. As such, Plaintiffs have not—and cannot—

23  state a claim upon which relief can be granted, despite being given multiple opportunities to do so.

24  Accordingly, the SAC should be dismissed without leave to amend.

25          **A.**      **The First Claim for Relief: The FDCPA is not Applicable to Plaintiffs' Case**

26                   **as a Matter of Law**

27      Plaintiffs' first claim for relief in the SAC is for Violation of the FDCPA. However, the

28  allegations in the Complaint are insufficient to state a violation of the FDCPA because Plaintiffs

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  have not and cannot allege facts to establish that a debt is owed, that there was a transaction between

2  the parties, or that Defendants are debt collectors as defined under the FDCPA.

3      The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt

4  collectors, to insure that those debt collectors who refrain from using abusive debt collection

5  practices are not competitively disadvantaged, and to promote consistent State action to protect

6  consumers against debt collection abuses." 15 U.S.C. § 1692(e). "When alleging a claim under the

7  FDCPA, a plaintiff must establish that (1) the plaintiff is a consumer, as defined by the FDCPA;

8  (2) the debt arises out of a transaction primarily for personal, family or household purposes; (3) the

9  defendant is a debt collector, as that phrase is defined by the FDCPA; and (4) the defendant violated

10  a provision of the Act." *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal. App. 4th 972, 997

11  (2013) (citing 15 U.S.C. § 1692e; *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)).

12      The conclusory allegations in Plaintiffs' SAC are insufficient to state a claim for FDCPA

13  violations because they have not and cannot allege any facts to meet the first three elements to state

14  a claim under the Act.

15      **1.      Plaintiffs are not "Consumers" and There is no "Debt" or**

16  **"Transaction" at Issue, as Defined under the FDCPA**

17      First, Plaintiffs are not "consumers" as defined by the FDCPA. A "consumer" is "any

18  natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt" in

19  turn "means any obligation of a consumer to pay money arising out of a transaction in which the

20  money, property, insurance, or services which are the subject of the transaction are primarily for

21  personal, family, or household purposes...." 15 U.S.C. § 1692a(5). Thus, a "threshold issue on an

22  FDCPA claim is whether the dispute involves a 'debt' within the meaning of the statute." *Lee v.*

23  *Pep Boys-Manny Moe & Jack of Cal.*, 186 F.Supp.3d 1014, 1021 (N.D. Cal. 2016) (citing *Fleming*

24  *v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). Liability arising from theft or torts does not

25  constitute a "debt" within the meaning of the FDCPA. *See Fleming v. Pickard*, 581 F.3d 922, 925

26  (9th Cir. 2009) ("The FDCPA, therefore, does not apply where a defendant attempts to collect a

27  state court judgment for damages as a result of tortious conduct. Other circuits have addressed

28  criminal wrongdoing or tortious acts in the context of FDCPA Claims, concluding that the

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    obligation to pay for criminal or tortious actions does not constitute a 'debt.'"); *see also, e.g.,*

2    *Beauvoir v. Israel*, 794 F.3d 244, 247 (2d Cir. 2015) ("[S]ister circuits [that] have addressed the

3    question [have] unanimously held that liability deriving from theft or torts does not constitute a

4    'debt' within the meaning of the FDCPA[.]") (collecting cases from the Third, Seventh, Ninth and

5    Eleventh Circuits).

6        Here, Plaintiffs' FDCPA claim is deceitfully based on alleged back rent owed by Mehl. In

7    their SAC, Plaintiffs define "debt" in Paragraph 13: "Mehl defaulted on his rent for the Property

8    (hereinafter "debt")." [SAC ¶ 13]. Plaintiffs then allege that the "debt" was "assigned or transferred

9    to Wilmington." [SAC ¶ 14]. This is blatantly false and contradicted by the State Court's orders

10   and judgment. The State Court specifically found that there were no leases related to the Property

11   when Wilmington acquired it, including as to Mehl. [RJN, Ex. 8 (MSJ Order, 5:15-19).] Indeed,

12   the Court found that Plaintiffs *forcibly* detained the Property without any right to possession

13   whatsoever. [*Id.*] For this Court to accept that there is a "debt" in the form of unpaid rent related to

14   the Property would require this Court to ignore the detailed findings of the State Court. Elsewhere

15   in the SAC, Plaintiffs vaguely refer to the fact that Wilmington sought damages for Plaintiffs'

16   unauthorized use of the Property in the form of reasonable rental value. [*See, e.g.,* SAC ¶¶ 19 and

17   29-30]. However, under the Ninth Circuit's rubric enunciated in *Fleming, supra*, which held that

18   liability from torts does not constitute a "debt" under the FDCPA, damages related to an authorized

19   occupant's tortious use of real property cannot possibly constitute a "debt" within the meaning of

20   the FDCPA. It cannot rationally be argued or accepted that a "debt" was owed on account of back-

21   rent; or, as discussed immediately below, that any obligation owing from Plaintiffs to Wilmington

22   is the result of a consensual consumer transaction, as required under the FDCPA.

23       Second, and relatedly, Plaintiffs have not and cannot allege *facts* to show that there existed

24   a "transaction" between the parties or that any purported "debt" arose from a "transaction" between

25   the parties, as those terms are defined under the FDCPA. The transaction contemplated under the

26   FDCPA must be a consensual transaction. *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, *supra*, 186

27   F. Supp. 3d at 1026 ("[T]he Ninth Circuit has clarified that to qualify as a 'debt' under the FDCPA,

28   the transaction leading to the debt must be a *consensual* consumer transaction.") (emphasis added).

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

"'At a minimum, a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation.'" *Fleming, supra*, 581 F.3d 922 at 925 (citing *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004)).

Plaintiffs do not allege or describe any transaction entered into by the parties, consensual or otherwise. Plaintiffs dishonestly allege that "Mehl rented the Property ... for personal and household use." [SAC ¶ 11]. But this is not true, as detailed in the State Court's orders. The State Court has already found that there was no contractual or other relationship between Mehl and Wilmington when it granted summary judgment in favor of Wilmington for *forcible* detainer. As stated in the State Court's detailed order, a finding of forcible detainer necessarily requires a finding that a "defendant, in the night-time or during the plaintiff-occupant's absence, unlawfully entered on the property..." [RJN, Ex. 8 (MSJ Order, 4:1-2)]. The State Court went on to find that Wilmington "establishe[d] that [Mehl] unlawfully entered the Property ... on August 5, 2020 ... without [Wilmington's] knowledge or consent." [*Id*. (MSJ Order, 4:27-5:3)]. Significantly, the State Court also found that neither Wilmington nor the prior owner of the Property had "any agreement, oral or written, with [Mehl] or any other party, to lease the Property.... [Mehl] did not submit any admissible evidence to controvert that material fact." [*Id*. (MSJ Order, 5:15-19).] To accept Plaintiffs' fanciful claim that it entered into some sort of consumer transaction with some unidentified party to lease the Property and that it owed any "back-rent" would again require this Court to ignore the detailed findings and rulings of the State Court. With no "transaction," as defined by the FDCPA, there can be no "debt" associated with any transaction and no relief for Plaintiffs under the Act.

## 2. Defendants are not "Debt Collectors" under the FDCPA

Finally, Plaintiffs fail to allege *facts* to show that Defendants are debt collectors under the FDCPA. Instead, they rely exclusively on the conclusory allegations that: (i) Wilmington "primarily engages in debt collection" (SAC ¶ 14); (ii) PSF's "principal business is debt collection" (SAC ¶ 16); and (iii) the Attorney Defendants "principal business is the collection of debt obligations on behalf of others" (SAC ¶ 17). None of these baseless allegations are sufficient under the Act. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Moreover, a "debt collector" under the statute is "one who 'regularly collects or attempts to collect, directly or indirectly, [consumer] debts owed ... another.'" *Heintz v. Jenkins*, 514 U.S. 291, 291 (1995) (alteration in original). There are no *factual* allegations in the SAC to indicate that Defendants qualify as "debt collectors" under the FDCPA. To the contrary, Wilmington's and its counsel's only action has been to pursue its lawful remedies to regain possession of the Property through filing the State Court lawsuit for Forcible Detainer.

Critically, to the extent Plaintiffs' SAC only copies sections from the governing statutes, without including any facts, allegations, or information specific to the actual facts here, the SAC is insufficient as a matter of law. *Romine v. Diversified Coll. Servs.*, 155 F.3d 1142, 1146 (9th Cir. 1998); *Ines v. Countrywide Home Loans*, 2008 WL 4791863 at *3-4 (S.D. Cal. Nov. 3, 2008) (complaint must allege facts showing that defendant is a debt collector within the scope of the FDCPA and has violated its provisions, mere conclusions will not suffice).

Further, in attempting to generically assert that the Attorney Defendants are debt collectors, Plaintiffs also ignore the precept that the Attorney Defendants' actions are outside of the FDCPA's coverage. Indeed, an attorney prosecuting an unlawful or forcible detainer action on behalf of their client, as a matter of law, is not a debt collector under the FDCPA. *See e.g. Hamilton v. US Bank, N.A.,* 2011 U.S. Dist. LEXIS 136493, at *11 (S.D. Cal. Nov. 28, 2011) (an attorney filing a wrongful detainer action on behalf of the purchaser of a foreclosed property is not a debt collector within the meaning of the FDCPA); *McFadden v. Deutsche Bank Nat'l Trust Co.*, 2011 U.S. Dist. LEXIS 91010, at *36 (E.D. Cal. Aug. 15, 2011) (unlawful detainer action sought possession of the already re-sold property, not the collection of any debt under the FDCPA); *Cook v. Hamrick*, 278 F. Supp. 2d 1202, 1204 (D. Colo. 2003) (attorney cannot be deemed a debt collector under the FDCPA based upon his role in filing a complaint in an action for unlawful detainer). A cursory review of the State Court's orders and records plainly shows that it is beyond doubt that the

1  Defendants' only action against Plaintiffs has been to pursue its lawful remedies to regain

2  possession of the Property.

3      In short, setting forth the name of a statute and reciting purported relevant portions thereof

4  are not sufficient to state a claim under federal law. Rule 8(a)(2) requires factual allegations

5  supporting a facially plausible claim for relief. Accordingly, the Court should grant Defendants'

6  Motion to Dismiss as to the First Claim for Relief for violation of the FDCPA because Plaintiffs'

7  claim is nothing but conclusory allegations and mere recitations of provisions of the FDCPA.

8          **B.      Plaintiffs Cannot State A Claim Under the Rosenthal Act**

9      As an initial matter, the Court has already declined to exercise supplemental jurisdiction

10  over Plaintiffs' claim for relief under the Rosenthal Act, California Civil Code section 1788, *et seq.*

11  In issuing its Order granting Defendants' first motion to dismiss (ECF No. 40), the Court

12  specifically authorized Plaintiffs leave to amend their claims under the FDCPA, the FCRA and the

13  TCPA. [ECF No. 40]. The Court specifically declined to exercise supplemental jurisdiction over

14  the Rosenthal Act claim and did not authorize Plaintiffs leave to amend such claim. [*See id.*] On

15  this basis alone, the Court should dismiss Plaintiffs' claim for relief under the Rosenthal Act.[6]

16      Setting this critical issue aside, Plaintiffs' claim under the Rosenthal Act is based on the

17  same purported violations of the FDCPA discussed above. Accordingly, to the extent the Court

18  decides to entertain Plaintiffs' unauthorized amended claim under the Rosenthal Act and exercises

19  supplemental jurisdiction thereover, Plaintiffs' claim for violation of the Rosenthal Act fails for the

20  same reasons explained above. California has incorporated by reference provisions of the FDCPA

21  into the Rosenthal Act. *Alkan v. Citimortgage, Inc*., 336 F. Supp. 2d 1061, 1065 (N.D. Cal. 2004).

22  California Civil Code section 1788.17 requires debt collectors in California to comply with 15

23

24  _____

25  [6] Cognizant of the Court's prior admonition that California's anti-SLAPP statute applies only to state, and not federal, claims (*see* ECF No. 38, fn. 1), to the extent the Court is inclined to exercise supplemental jurisdiction over

26  the Rosenthal Act claim, Defendants renew their Motion to Strike pursuant to California Code of Civil Procedure section 425.16 on the grounds that the SAC and the Rosenthal Act claim are meritless and brought for the purpose of chilling Defendants' right of petition. Defendants' Motion to Strike pursuant to California Code of Civil Procedure

27  section 425.16 is fully briefed, is on file with the Court as ECF No. 18 and is hereby incorporated by reference to the extent the Court decides to exercise supplemental jurisdiction over the Rosenthal Act claim. To the extent the Court

28  does exercise such jurisdiction but requires an additional motion or briefing on this issue, Defendants respectfully request leave of Court to do so.

SNELL & WILMER

4886-1111-9421

- 19 -

1  U.S.C. sections 1692b through 1692j, and states that violators will be subject to the remedies

2  provided by 15 U.S.C. section 1692k. Cal. Civ. Code § 1788.17.

3      As with Plaintiffs' claim under the FDCPA, Plaintiffs' claim for violation of the Rosenthal

4  Act is also devoid of any facts to establish the threshold elements of a claim under that statute,

5  namely, that Plaintiffs owe a "debt" on account of a "consumer credit transaction" and that each

6  defendant is a "debt collector"[7] with respect to Plaintiffs. *See* Cal. Civ. Code § 1788.2. Critically,

7  Plaintiffs' SAC is insufficient to state a claim under the Rosenthal Act because the alleged conduct

8  is vaguely attributed to all Defendants and the allegations are otherwise conclusory.

9      Again, other than identifying the statute, and quoting portions of Civil Code Section 1788

10  *et seq.*, Plaintiffs wholly fail to identify the elements of the alleged claims, let alone any facts or

11  information to support the claims. Accordingly, even had the Court not declined to exercise

12  supplemental jurisdiction over Plaintiffs' claim for relief under the Rosenthal Act (which it clearly

13  did), Plaintiffs' claim under the Act fails as Plaintiffs have offered no factual allegations that

14  support the elements of a claim for violation of the Rosenthal Act or the sections of the Act upon

15  which they rely. Defendants' Motion to Dismiss as to the Second Claim for Relief in the SAC

16  therefore should be granted.

17      **C.      The FCRA is not Applicable to Plaintiffs' Case as a Matter of Law**

18      Plaintiffs' third claim for relief in the SAC is for purported violations of the FCRA. As an

19  initial matter, despite this being the *third* iteration of Plaintiffs' meritless claim, it remains entirely

20  unclear exactly what information was allegedly furnished by Defendants to the credit reporting

21  agencies ("CRA(s)"). Moreover, accepting Plaintiffs' alleged "particular debt" as true would once

22  more require the Court to ignore the detailed findings and rulings of the State Court. Setting this

23  aside, the allegations in the SAC are insufficient to state a claim for violation of the FCRA because

24  Plaintiffs have not and cannot alleges facts to establish that Defendants are "furnishers" of creditor

25  information and, even if Defendants were "furnishers" of credit information, the statutorily created

26

27

28

---

[7] The Rosenthal Act defines "debt collector" as: any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection.

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    obligation imposed on a furnisher of information under Section 1681s-2(b) is owed only to the

2    CRA, not to individual "consumers" like Plaintiffs.

3            **1.      Plaintiffs' FCRA Claim Must Be Dismissed Because Defendants are**

4                     **Not Furnishers of Information**

5            The FCRA imposes duties on consumer reporting agencies, users of consumer reports, and

6    furnishers of information to consumer reporting agencies. *See* 15 U.S.C. § 1681, *et seq*. Plaintiffs'

7    FCRA claim must be dismissed because defendants PSF and Wilmington are not "furnishers of

8    credit information" under the FCRA.

9            Plaintiffs' third claim for relief is based on the contention that PSF and Wilmington "either

10   directly or through their agents, in the ordinary course of business, regularly and on a routine basis

11   furnish information to one or more consumer reporting agencies, as that term is defined by title 15

12   U.S.C. § 1681a(f)." [SAC ¶ 75]. As an initial matter, in a desperate attempt to overcome a patent

13   pleading deficiency, Plaintiffs allege that these defendants "transmitted information concerning a

14   particular debt owed by Plaintiff(s) to the national credit reporting agencies..." (SAC ¶ 76), yet it

15   remains entirely unclear just which "particular debt" these defendants reported or what, if anything

16   at all, was reported. Plaintiffs allegedly informed the CRAs that their "credit reports reflected

17   inaccurate information as reported to the unlawful detainer registries."[8] [SAC ¶ 42]. Plaintiffs

18   allegedly informed the CRAs "of a dispute regarding the information furnished by [PSF] and

19   Wilmington to the Plaintiffs' credit reports." [SAC ¶ 43]. Plaintiffs allege that PSF and Wilmington

20   "failed to mark the debt in dispute." [SAC ¶ 45]. Plaintiffs allege that, based on this conduct, their

21   "credit reports continued to reflect inaccurate information provided by [PSF and Wilmington]."

22   [SAC ¶ 48]. Plaintiffs allegedly had to "spen[d] time and incur[] expenses to fix the errors on their

23   consumer credit reports." [SAC ¶ 52]. Despite these allegations, it remains wholly unclear just

24   what, if anything at all, was allegedly furnished to the CRAs. The only "debt" discussed in

25   Plaintiffs' SAC is the alleged back-rent owed by Mehl, but if the Court were to accept this

26   "particular debt" as the debt reported by PSF and Wilmington to the CRAs, then the Court would

27   have to ignore the detailed findings and rulings of the State Court.

28

---

[8] It is equally unclear just who the "unlawful detainer registries" are.

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

As detailed in the State Court's orders, there was never any relationship between Plaintiffs and Wilmington nor did Plaintiffs ever have authority to enter, let alone reside, at the Property. [RJN, Ex. __ (MSJ Order, 4-5:27-6)]. Plaintiffs are not "tenants" or "consumers" who entered into a mutually voluntary relationship with Wilmington. Rather, and as found by the State Court, after Wilmington foreclosed on *vacant* residential property and took possession by changing the locks and securing the Property, Plaintiffs moved in, changed the locks, denied Wilmington access thereto and, after Wilmington was forced to resort to judicial process, engaged in a lengthy and abusive litigation strategy designed to thwart Wilmington at every turn. [*See id.* (MSJ Order); *see also* RJN, Ex. __ (State Court's *Sua Sponte* Order Denying Ex Parte Application to Stay Writ of Possession) (detailing Mehl's "lack of good faith" and "weaponized" use of legal process to "delay the proceedings.")]. There is no basis for Plaintiffs' fanciful claim that the "particular debt" of back-rent was ever owed, as Plaintiffs *forcibly* detained the Property.

Setting aside the fact that Plaintiffs were never "tenants" at the Property, and thus not "consumers" as contemplated by the FCRA, Plaintiffs' "disputes" are not legitimate. Judgment *was* entered against Plaintiffs in the Forcible Detainer Action. [RJN Ex. 9 (Judgment in forcible detainer action)]. Because Plaintiffs never had any right to occupy the Property in the first instance, the prior unlawful detainer case was in fact dismissed, which is a matter of public record. [RJN, Ex. 3 (Request for Dismissal)]. It is entirely unclear how Defendants could be held responsible for the CRAs alleged misunderstanding of the dismissal of the unlawful detainer action or the fact that judgment was in fact entered against Plaintiffs in the Forcible Detainer Action. Simply put, Plaintiffs' claims are not premised on legitimate consumer disputes – Plaintiffs are not "consumers" entitled to protection under the FCRA as it relates to the trespasser-trespassee relationship between them and Wilmington. Despite multiple amendments, Plaintiffs continue to obfuscate their pleadings on this issue, which plainly demonstrates the reality behind Plaintiffs' bogus claims— there never was any reporting to the CRAs (let alone misreporting), nor was there ever any investigations by the CRAs. The SAC should fail on this basis alone.

Setting all of these critical issues aside, and entertaining Plaintiffs' invented claims, the allegations in the SAC are insufficient to state a violation of the FCRA because Plaintiffs have not

4886-1111-9421

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

SNELL & WILMER

L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  and cannot allege *facts* to establish that Defendants Wilmington and PSF are "furnishers" of credit

2  information.  The FCRA does not define "furnisher of information." However, courts have defined

3  a furnisher as an entity that "transmits information concerning a particular debt owed by a particular

4  consumer" to a consumer reporting agency. *Heras v. Nelnet, Inc.,* 2017 WL 4586334, at *5 (C.D.

5  Cal. Apr. 28, 2017); *see also Callahan v. Equifax Info. Servs*. LLC, 2013 WL 5503949, at *2 (N.D.

6  Cal. Oct. 3, 2013) (defining furnishers as entities that "provide credit information to credit reporting

7  agencies"); *Carney v. Experian Info. Solutions, Inc.,* 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999)

8  (defining a furnisher as an entity which "transmits information concerning a particular debt owed

9  by a particular consumer").

10       Plaintiffs' SAC is completely devoid of any *factual* allegations that PSF or Wilmington ever

11  provided or transmitted any information to any credit reporting agency concerning a particular debt.

12  Plaintiffs fail to allege, among other key facts, that there was a debt; the date(s) and content of any

13  allegedly incorrect or inaccurate credit reporting by Defendants to any credit reporting agency; or

14  how the alleged misreporting was purportedly inaccurate. Plaintiffs also fail to attach any

15  documentation whatsoever that support their conclusory assertions.

16       In short, Plaintiffs have not and cannot establish that any of the Defendants are "furnishers

17  of information" within the meaning of the FCRA. *See e.g. Molina v. Synchrony Bank/Walmart*, No.

18  EDCV171464JGBJEMX, 2018 WL 2721903, at *3 (C.D. Cal. Apr. 17, 2018) (determining

19  Walmart is a not furnisher within the meaning of FCRA).

20           **2.      Plaintiffs' § 1681s-2(b) Claim Must Be Dismissed Because no Credit**

21                     **Reporting Agency Provided Notice of Consumer Dispute**

22       Even if defendants PSF and Wilmington were "furnishers" of credit information—which

23  they are not—it is equally clear from the statutory scheme that Plaintiffs cannot bring an action

24  under these circumstances.  Section 1681s-2(b) explains the responsibilities of furnishers of credit

25  information after they have been notified by a credit reporting agency that the consumer disputes

26  the credit information provided by the furnisher. Upon receiving notice of a dispute, the furnisher

27  is to conduct an investigation and report the results to the appropriate consumer reporting agencies.

28  *See id*. § 1681s-2(b). Moreover, the duties described in section 1681s-2(b) are triggered only upon

4886-1111-9421

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   notice received from a consumer reporting agency, <u>not</u> the consumer, and appear to exist solely for

2   the benefit of consumer reporting agencies which face liability under the remainder of the FCRA

3   to the consumer for erroneous and inaccurate reporting. *Rieger v. Am. Exp. Co*., No. C 11-4202

4   MEJ, 2011 WL 5080188, at *2 (N.D. Cal. Oct. 25, 2011) (citing *Peasley v. Verizon Wireless (VA*

5   *W) LLC*, 364 F.Supp.2d 1198, 1200 (S.D. Cal. 2005) ("Courts have consistently held that for the

6   duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received

7   notice of the dispute from a consumer reporting agency, not from the consumer."). "A furnisher is

8   liable under the FCRA only if it does not respond to a formal notice of consumer dispute from a

9   consumer reporting agency." *Arikat v. JP Morgan Chase & Co*., 430 F. Supp. 2d 1013, 1023–25

10  (N.D. Cal. 2006) (dismissing cause of action for violation of FCRA for failure to state a claim); *see*

11  *also* 15 U.S.C. § 1681s-2; 15 U.S.C. § 1681i(a)(2); *Nelson v. Chase Manhattan Mortg. Corp*., 282

12  F.3d 1057, 1060 (9th Cir. 2002) (holding that Congress set up 15 U.S.C. § 1681s-2(b) as a "filtering

13  mechanism" wherein a disputatious consumer notifies a consumer reporting agency which in turns

14  notifies the furnisher, and only a nonresponsive furnisher may be privately sued).

15      Here, in an obvious effort to correct a pleading deficiency, Plaintiffs allege, "[o]n

16  information and belief, Defendants were notified by the CRAs of the dispute regarding furnished

17  information; however, they failed to mark the debt in dispute and failed to report the results of the

18  investigation to the CRAs." [SAC ¶ 80]. This threadbare allegation need not be accepted as true

19  where there are no details whatsoever. Plaintiffs have not provided any information—such as the

20  who, what, when and where—regarding their alleged notice of dispute to the CRAs. Nor must this

21  allegation be accepted as true when the alleged debt is a manufactured, contrived allegation

22  concerning "back-rent" when the State Court has expressly found that Plaintiffs *forcibly* detained

23  the Property in the first instance. Accordingly, Plaintiffs' claim should be dismissed without leave

24  to amend.

25  //

26  //

27  //

28

4886-1111-9421

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**D.**      **Plaintiffs are Collaterally Estopped from Basing Their Claims on Unpaid Rent on Account of a Non-Existent Lease for the Property**

The doctrine of collateral estoppel applies when four factors are present: (1) the issue at stake was identical to the issue in the previous proceeding; (2) the issue was actually litigated and decided in the prior proceeding; (3) there was a fully and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits. *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012).

As discussed throughout this Motion, Plaintiffs claims are premised on the underlying allegations that (i) "Mehl rented the Property commonly known as 1400 36th Street in Sacramento, California (the 'Property') for personal and household use" (SAC ¶ 11); and (ii) "Mehl defaulted on his rent for the Property (hereinafter 'debt')" (SAC ¶ 13). However, Plaintiffs are precluded from basing their claims on these allegations.

First, the issues are identical. The fundamental question at issue in the Forcible Detainer Action was the right to possession of the Property. The issue here is whether "Mehl rented the Property" and "defaulted on his rent for the Property" as alleged in the SAC. [SAC ¶¶ 11, 13]. Second, these issues were actually litigated in the Forcible Detainer Action. Wilmington filed its complaint and motion for summary judgment in the Forcible Detainer Action, which Plaintiff Mehl opposed. Both parties argued their positions at the hearing before the State Court judge, who ruled on the motion after considering the papers and the arguments. Third, Mehl not only had the *opportunity* to litigate, he did in fact litigate the issue by filing an opposition and appearing at the hearing on the motion. Last, the issue was necessary to decide the merits. As stated in the State Court's detailed order, a finding of forcible detainer necessarily requires a finding that a "defendant, in the night-time or during the plaintiff-occupant's absence, unlawfully entered on the property..." [RJN, Ex. 8 (MSJ Order, 4:1-2)]. The State Court went on to find that Wilmington "establishe[d] that [Mehl] unlawfully entered the Property ... on August 5, 2020 ... without [Wilmington's] knowledge or consent." [*Id*. (MSJ Order, 4:27-5:3)]. Significantly, the State Court also found that neither Wilmington nor the prior owner of the Property had "any agreement, oral or written, with [Mehl] or any other party, to lease the Property.... [Mehl] did not submit any admissible evidence

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  to controvert that material fact." [*Id*. (MSJ Order, 5:15-19).]

2          To accept Plaintiffs' fanciful claims in this action that it entered into any lease agreement

3  related to the Property or that it owes "back-rent" for its unauthorized use of the Property would

4  require this Court to ignore the detailed findings and rulings of the State Court. Plaintiffs are thus

5  collaterally estopped from re-litigating these issues in this case.

6          **E.      Leave to Further Amend Should be Denied**

7          "District courts have broad discretion in deciding whether to grant leave to amend and

8  whether to dismiss actions with or without prejudice." *WPP Luxembourg Gamma Three Sarl v.*

9  *Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (abrogated on other grounds by *Lorenzo v.*

10  *SEC*, __ U.S. __, 139 S.Ct. 1094 (2019)). While federal courts "should freely give leave [to amend]

11  when justice so requires", (Fed. R. Civ. Proc. 15(a)(2)), leave to amend need not be granted upon

12  "a clear showing that amendment would be futile." *National Council of La Raza v. Cegavske*, 800

13  F.3d 1032, 1041 (9th Cir. 2015); *see also, e.g., In re Daou Systems, Inc.*, 411 F.3d 1006, 1013 (9th

14  Cir. 2005) ("Dismissal without leave to amend is improper *unless* it is clear ... that the complaint

15  could not be saved by any amendment.") (emphasis added). In determining whether leave to amend

16  should be granted, courts focus on five factors: bad faith, undue delay, prejudice to the opposing

17  party, futility of amendment, and whether the plaintiff has previously amended the complaint. *U.S.*

18  *v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

19          Here, Plaintiffs' claims should be dismissed without leave to amend because amendment

20  would be futile, because Plaintiffs have acted in bad faith and because Plaintiffs have already had

21  ample opportunity to amend their complaint.

22          **1.      Amendment of Plaintiffs' Claims Would be Futile**

23          "Under the futility analysis, '[d]ismissal without leave to amend is improper unless it is

24  clear ... that the complaint could not be saved by any amendment.'" *Corinthian Colleges, supra*,

25  655 F.3d at 995 (citations omitted); *see also, e.g., Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

26  2000) (noting that a court should permit amendment "'unless it determines that the pleading could

27  not possibly be cured by the allegation of other facts.'") (citations omitted). "Leave to amend is

28  warranted if the deficiencies can be cured with additional allegations that are 'consistent with the

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  challenged pleading' and that do not contradict the allegations in the original complaint." *U.S. v.*

2  *Corinthian Colleges, supra*, 655 F.3d at 995 (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-

3  97 (9th Cir. 1990).

4      Here, amendment of the FDCPA claim and the FCRA claim would be futile and leave to

5  amend should not be granted.[9] As discussed herein, Plaintiffs' claims under the FDCPA and the

6  FCRA are deceitfully based on alleged back rent owed by Mehl. However, the State Court has

7  already found that there was no contractual or other relationship between Mehl and Wilmington

8  when it granted summary judgment in favor of Wilmington for forcible detainer. As stated in the

9  State Court's detailed order, a finding of forcible detainer necessarily requires a finding that a

10  "defendant, in the night-time or during the plaintiff-occupant's absence, unlawfully entered on the

11  property..." [RJN, Ex. 8 (MSJ Order, 3-4:28-2)]. The State Court went on to find that Wilmington

12  "establishes that [Mehl] unlawfully entered the Property ... on August 5, 2020 ... without

13  [Wilmington's] knowledge or consent." [*Id.*, 4-5:27-4)).] Significantly, the State Court also found

14  that Wilmington and Ikon, the prior owner of the Property, "did not have any agreement, oral or

15  written, with [Mehl] or any other party, to lease the Property.... [Mehl] did not submit any

16  admissible evidence to controvert that material fact." [*Id.*, 5:15-19)].

17      With these judicially noticeable findings from the State Court in mind, Plaintiffs cannot

18  allege that the debt arises out of a transaction entered into for personal purposes. Neither

19  Wilmington nor any of the other Defendants entered into a voluntary transaction with Plaintiffs. To

20  the contrary, the only relationship that ever existed between Plaintiffs and Wilmington was that of

21  trespasser and trespassee. As such, any amendment of the FDCPA and the FCRA claim would be

22  futile and leave to amend should not be granted.

23          **2.      Plaintiffs' Bad Faith Warrants Dismissal Without Leave to Amend**

24      A litigant's bad faith may serve as a basis to deny leave to amend. *See Corinthian Colleges,*

25  *supra*, 655 F.3d at 995. Here, Plaintiffs' claims against Defendants are premised on a fictitious

26  story of unpaid rent and Defendants' alleged quest to recover that rent. This is emphatically false.

27

28  ───────────────
[9] To the extent the Court exercises supplemental jurisdiction over the Rosenthal Act claim, leave to amend that claim should likewise be denied.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  The underlying tale involves Wilmington acquiring the Property only to be stripped of possession

2  by Plaintiffs, who never had *any* right to possession thereof and forcibly detained the property from

3  Wilmington for well over a year, all as specifically found by the State Court. [*See* RJN, Ex. 8, (MSJ

4  Order)]. As set forth herein, Plaintiffs have made multiple representations in their pleadings that

5  contradict the express rulings of the State Court. This bad faith warrants dismissal without leave to

6  amend.

### 3.  Plaintiffs' Have Previously Amended

8      The Court may also consider whether a plaintiff has had prior opportunities to amend his or

9  her pleading before dismissing a claim without leave to amend. *See Corinthian Colleges, supra*,

10  655 F.3d at 995. Here, the instant SAC represents Plaintiffs' *third* iteration of their claims. Plaintiffs

11  have had multiple opportunities to plead their meritless claims. Any additional amendments would

12  be futile and subject to dismissal for the reasons stated herein. Accordingly, the fact that Plaintiffs

13  have already had multiple opportunities to amend further warrants dismissal without leave to

14  amend.

### IV.  <u>CONCLUSION</u>

16      Based on the foregoing, Defendants respectfully request that the Court dismiss the SAC

17  without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants further

18  request such other and additional relief as the Court deems just and proper.

19

20  Dated: November 9, 2022                          SNELL & WILMER L.L.P.

21

22                                        By:  */s/ Eric S. Pezold*
                                               Eric S. Pezold
23                                             Andrew B. Still

24                                             Attorneys for Defendants

25

26

27

28

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Mehl, et al. v. Wilmington Trust, et al.; Case No. 2:21-CV-01861-TLN-JDP

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, California 92626.

On November 9, 2022, I served, in the manner indicated below, the foregoing document described as: **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action:

**Ron Cupp**                                        Plaintiffs
150 Raley Town Center, Ste 2512
Rohnert Park, CA 94926

**Gavin Mehl**
5960 S Land Park Dr. #1166
Sacramento, CA 95822
Email:  mehlgavin@gmail.com

☒   BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to.

☐   BY OVERNIGHT DELIVERY:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees.

☒   BY E-FILING (USDC Eastern): I caused such document to be sent electronically to the court; pursuant to General Order No. 08-02, electronic filing constitutes service upon the parties who have consented to electronic service.

☒   BY ELECTRONIC MAIL/E-SERVICE: I caused such document(s) to be delivered electronically to the following email address:  mehlgavin@gmail.com

☒   FEDERAL:  I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

EXECUTED on November 9, 2022, at Costa Mesa, California.

SNELL & WILMER L.L.P.

By: /s/Kimberly A. Collins
Kimberly A. Collins