1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GAVIN MEHL, *et al.*,                          Case No.  2:21-cv-01861-TLN-JDP (PS)

12              Plaintiffs,

13         v.                                       FINDINGS AND RECOMMENDATIONS

14   WARREN GREEN, *et al.*,

15              Defendants.

16

17

18

19

20         Plaintiffs, proceeding without counsel, allege that defendants Wilmington Trust, N.A., PS

21   Funding, Inc (referred to as PeerStreet), Snell & Wilmer, L.L.P., and Andrew B. Still violated

22   plaintiffs' rights under the Fair Debt Collections Practices Act, the Fair Credit Reporting Act, and

23   the California Rosenthal Act.  ECF No. 43.  This court previously dismissed plaintiffs' first

24   amended complaint with leave to amend for failure to state a claim.  ECF Nos. 16 & 40.

25   Defendants now move to dismiss plaintiffs' second amended complaint.  ECF No. 44.  The

26   second amended complaint similarly fails to state a claim, and I will recommend that it be

27   dismissed without leave to amend.  *See* ECF Nos. 38 & 40.

28

1

**Background**

**A.      Plaintiffs' Allegations**

Plaintiffs allege that plaintiff Mehl rented a property located at 1400 36th Street, Sacramento, California, in approximately June 2020.  ECF No. 43 at 4.  After Mehl allegedly defaulted on his rent, the resulting debt was assigned or transferred to defendant Wilmington Trust.  *Id.*  Plaintiffs allege that defendant PeerStreet is an agent of Wilmington, whose principal business is debt collection, and that both PeerStreet and Wilmington retained defendant Still—an attorney for defendant Snell & Wilmer—to represent them in collecting Mehl's debt.  *Id.*  They allege that "California TD Specialists, as agents for PeerStreet and Wilmington, recorded a Notice of Trustee Sale against the Property on June 8, 2020"—the same month that Mehl allegedly began renting the property.  *Id.*  The Notice of Trustee Sale indicates that Ikon Homes, Inc., had been the trustor and that PS Funding, Inc., was the beneficiary of the sale.  ECF No. 48 at 5-6.[1] Plaintiffs do not identify the entity that transacted with Mehl to rent the property or the owner of the property at the time he began renting it.  ECF No. 43 at 4.

At an unspecified later date, defendants Snell & Wilmer—on behalf of PeerStreet and Wilmington—allegedly filed a complaint for unlawful detainer against Mehl in state court ("First State Complaint," Sacramento Superior Court Case No. 20UD01465), seeking "possession, statutory damages, and damages equal to the Property's reasonable rental value of $162.66 per day."  *Id.* at 5.  Plaintiffs allege that, although defendants "PeerStreet and Wilmington agreed to settle in Mehl's favor and dismiss" the complaint, defendants nevertheless "reported Mehl to the unlawful detainer registries."  *Id.*  Plaintiffs allege that Mehl subsequently attempted to secure a loan to help him pay rent on a rental property but was informed that he did not qualify for financial assistance because of the unlawful detainer action.  *Id.*  Mehl then allegedly received a letter from defendants directing him to surrender the property; plaintiffs characterize this letter as an attempt "to collect a debt."  *Id.* at 6.  Defendants then initiated a second suit in state court

---

[1] Plaintiffs ask the court to take judicial notice of this document.  ECF No. 48.  This is unnecessary since the document is referenced in the second amended complaint and submitted by plaintiffs.  For the purposes of the instant motion, it is appropriate to consider the contents of this document as though it had been attached to the complaint.

1   against plaintiffs Mehl and Cupp, along with other alleged occupants of the property, seeking

2   "statutory damages of up to $600, possession of the Property, and damages equal to the

3   reasonable rental value of $162.66 per day"—amounting to a total of $59,208.24. *Id.* at 6

4   (referring to the "second state complaint," Case No. 21UD01125).[2]

5          Plaintiffs allege that Mehl notified PeerStreet and Wilmington that he disputed the debt,

6   and that those defendants were therefore "obligated to cease any further collection activity until

7   the debt was validated." *Id.*  They allege, "[o]n information and belief," that "defendants

8   Wilmington and PeerStreet . . . transmitted information concerning a particular debt owed by

9   Plaintiff(s) to the national credit reporting agencies." *Id.* at 14.  Plaintiffs allege that on October

10  7, 2021, they "each individually notified LexisNexis, Experian, TransUnion, Equifax, and Innovis

11  in writing that [their] credit reports reflected inaccurate information as reported to the unlawful

12  detainer registries." *Id.* at 8.  Finally, they allege that, "on information and belief, each of the

13  CRAs notified PeerStreet and Wilmington of the Plaintiffs' dispute." *Id.*

14         Based on these allegations, plaintiffs claim that each defendant violated the Fair Debt

15  Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and California's

16  Rosenthal Act ("Rosenthal Act"). *Id.* at 10-20.

17         **B.      State Court Cases**

18         Defendants argue that plaintiffs are collaterally estopped from bringing any claims based

19  on the allegations that (1) "Mehl rented the Property" at issue "for personal and household use" or

20  that (2) "Mehl defaulted on his rent for the Property." ECF No. 44 at 25 (quoting ECF No. 43 at

21  4).  Defendants provide court records from the underlying litigation, including filings from both

22  the first and second state court actions and an order granting their motion for summary judgment

23  against Mehl and Cupp. *Id.* (citing ECF No. 44-1 at 79-84).[3]  I recount the relevant findings here

24  and address defendants' arguments for collateral estoppel in the discussion below.

25         [2] Beyond alleging that Cupp was named in the second state complaint, the second
26  amended complaint provides few factual allegations regarding Cupp's connection to the property,
    to Mehl, or to defendants.
27         [3] Defendants ask the court to take judicial notice of state court records and documents
    related to the underlying action, including a state court order granting summary judgment in favor
28  of defendants in an unlawful detainer action against plaintiffs. ECF No. 44-1. Since these

1    On October 28, 2020, defendant Wilmington filed a complaint for unlawful detainer

2   against Ikon Homes—the prior owner of the proper—and its occupants, including Mehl and

3   several Doe defendants.  ECF No. 44-1 at 6-9.  This complaint corresponds with the complaint

4   referred to by plaintiffs as the "first state complaint," Case No. 20UD01125.  It reflects that

5   Wilmington believed the occupants to have been renting the property from Ikon and that any such

6   rental agreement had been terminated by Wilmington's acquisition of the property at the June

7   2020 foreclosure sale.  *See id.* at 8.  On April 26, 2021, Mehl filed a prejudgment claim of right to

8   possession, asserting that he had "an oral or written rental agreement with the former owner who

9   lost the property to foreclosure."  *Id.* at 19-20.  Wilmington thereafter voluntarily dismissed the

10   first state complaint and filed the second state complaint, Case No. 21UD01125, alleging a claim

11   of forcible detainer against the occupants of the property, including Mehl and Cupp.  *Id.* at 29-32.

12    In October 2021, the state court granted Wilmington's motion for summary judgment and

13   entered judgment in Case No. 21UD01125 against Mehl, Cupp, and several others.  *Id.* at 79-92.

14   The court found the evidence sufficient to grant summary judgment against defendants Mehl and

15   Cupp on a claim of forcible detainer, which requires, *inter alia*, a showing that "defendant[s], in

16   the night-time or during the plaintiff-occupant's absence, unlawfully entered on the property."  *Id.*

17   at 81-82 (citing Cal. Civ. Proc. Code 1160(a)(2)).  In particular, the court found no genuine

18   dispute as to the following material facts: defendant Wilmington had acquired title of the property

19   at 1400 36th Street, Sacramento, California, from Ikon Homes on July 2, 2020; at the time of

20   purchase, the property was vacant, and Ikon "did not have any agreements, oral or written, to

21   lease the Property prior to the trustee's sale"; on August 5, 2020, "Mehl . . . entered upon the

22   Property without [Wilmington's] knowledge or consent."  *Id.* at 80-81.

23                                      **Legal Standards**

24    "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable

25   legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v.*

26   *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  Rule 8 of the Federal Rules of Civil Procedure

27   _____

28   documents are all court filings or public records, they are proper subjects of judicial notice.  Fed.
     R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

1  requires that a complaint contain "a short and plain statement of the claim showing that the

2  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a

3  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

4  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

5  *Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff "pleads

6  factual content that allows the court to draw the reasonable inference that the defendant is liable

7  for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

8       In assessing the sufficiency of the pleadings, "courts must consider the complaint in its

9  entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions

10  to dismiss, in particular, documents incorporated into the complaint by reference, and matters of

11  which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

12  308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and

13  construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp.,*

14  *Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007). However, "the tenet that a court

15  must accept as true all of the allegations contained in a complaint is inapplicable to legal

16  conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

17  conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can

18  provide the complaint's framework, they must be supported by factual allegations." *Id.* at 679.

19  Those facts must be sufficient to push the claims "across the line from conceivable to plausible."

20  *Id.* at 683. Ultimately, the allegations must "give the defendant fair notice of what the . . . claim

21  is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and

22  citation omitted).

23                                    **Discussion**

24       The second amended complaint does not state a claim under the FDCPA or FCRA. These

25  claims should be dismissed with prejudice, and the court should decline to exercise supplemental

26  jurisdiction over the remaining state law claim.

27

28

5

1          **A.     Fair Debt Collection Practices Act**

2          Plaintiffs allege that defendants committed several violations of the FDCPA, including by

3     making threats to undertake unlawful debt-collection actions, "falsely impl[ying] that Plaintiffs

4     committed the crime of trespass," and "fail[ing] to cease collection of the debt" upon plaintiffs'

5     request that it be verified.  ECF No. 43 at 10-11.  Defendants argue that plaintiffs' allegations are

6     insufficient to state a claim under the FDCPA because plaintiffs cannot "establish that a debt is

7     owed, that there was a transaction between the parties, or that Defendants are debt collectors as

8     defined under the FDCPA."  ECF No. 44 at 15.

9          The FDCPA was enacted "to eliminate abusive debt collection practices by debt

10    collectors, to insure that those debt collectors who refrain from using abusive debt collection

11    practices are not competitively disadvantaged, and to promote consistent State action to protect

12    consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To effectuate this purpose, the

13    FDCPA prohibits a "debt collector" from making false or misleading representations and from

14    engaging in certain abusive and unfair practices.  *See Schlegel v. Wells Fargo Bank, N.A.*, 720

15    F.3d 1204, 1207-08 (9th Cir. 2013).  "To establish a claim under the FDCPA, a plaintiff must

16    show that: (1) she is a consumer within the meaning of [§ 1692a(3)]; (2) the debt arises out of a

17    transaction entered into for personal purposes; (3) the defendant is a debt collector within the

18    meaning of [§ 1692a(6)]; and (4) the defendant violated one of the provisions of the FDCPA."

19    *Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1193-94 (E.D. Cal. 2013) (quoting

20    *Laugenour v. Northland Grp. Inc.*, No. 2:12-cv-02995-GEB-DAD (PS), 2013 WL 3745727, at *2

21    (E.D. Cal. July 15, 2013)).

22         Defendants argue that plaintiffs have not sufficiently alleged that defendants are debt

23    collectors, and they argue that plaintiffs cannot establish that they are consumers or that they

24    owed any debt as those terms are defined under the FDCPA.  ECF No. 44 at 15.  Plaintiffs are

25    collaterally estopped from alleging the existence of a debt based on past-due rent—the sole

26    potentially sufficient allegation in the second amended complaint.[4]

27    _____

28         [4] In my September 2022 findings and recommendations, I found that plaintiffs' first
      amended complaint failed to adequately allege that defendants are debt collectors under the

                                            6

1    "Collateral estoppel applies to a question, issue, or fact when four conditions are met:

2    (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and

3    decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and

4    (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th

5    Cir. 2012). Federal courts "are required to give state court judgments the preclusive effect they

6    would be given by another court of that state." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir.

7    2009). "The potential of an unlawful detainer judgment to collaterally estop subsequent litigation

8    has been recognized by the California Supreme Court." *McAlister v. Essex Prop. Tr.*, 504 F.

9    Supp. 2d 903, 907 (C.D. Cal. 2007) (citing *Vella v. Hudgins*, 20 Cal.3d 251, 256 (1977)); *see also*

10   *Phillips v. Archstone Simi Valley LLC*, CV-15-5559 DMG (PLAx), 2017 WL 11683680, at *9

11   (C.D. Cal. Jan. 13, 2017) (holding that judgment in state unlawful detainer action collaterally

12   estopped subsequent litigation as to whether a debt for back rent existed under the FDCPA).

13   The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay

14   money arising out of a transaction in which the money, property, insurance, or services which are

15   the subject of the transaction are primarily for personal, family, or household purposes, whether

16   or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Back rent

17   constitutes a debt under the FDCPA because it "is an obligation that arises only from the tenant's

18   failure to pay the amounts due under the contractual lease transaction." *Dickman v. Kimball,*

19   *Tirey & St. John, LLP*, 982 F. Supp. 2d 1157, 1164 (S.D. Cal. 2013) (quoting *Romea v. Heiberger*

20   *& Assoc.*, 163 F.3d 111, 115 (2d Cir. 1998)). However, because "'a transaction under the

21   FDCPA must involve some kind of business dealing or other consensual obligation,' . . . the

22

23   FDCPA. *See* ECF No. 38 at 6-7 (explaining that "[d]efendants' attempts to collect a single debt, however, do not make them debt collectors") (citing *Alexander v. Wells Fargo Bank, N.A.*,

24   No. C15-459RAJ, 2015 WL 5123922, at *5 (W.D. Wash. Sept. 1, 2015) (dismissing the FDCPA claims because the complaint did not allege that defendants' "principal business is to collect debts

25   or that they regularly do so on behalf of others")). Plaintiffs addressed that insufficiency by adding the allegations that defendant Wilmington "primarily engages in debt collection," that

26   "PeerStreet's principal business is debt collection," and that the attorney defendants' "principal

27   business is the collection of debt obligations." ECF No. 43 at 4. Although such conclusory allegations are not a substantial improvement, it is unnecessary to evaluate their sufficiency in

28   light of their failure to allege the existence of a debt.

7

1   obligation to pay for criminal or tortious actions does not constitute a 'debt.'" *Fleming v.*

2   *Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (quoting *Turner v. Cook*, 362 F.3d 1219, 1225 (9th

3   Cir. 2004)).

4          Defendant Wilmington brought a forcible detainer action against plaintiffs in California

5   state court and received a judgment on the merits.  *See* ECF No. 44-1 at 79-84.  The order

6   granting summary judgment reflects that the court heard oral argument and considered briefs filed

7   in support of and in opposition to the motion.  *Id.* at 80.  Thus, the parties had a full and fair

8   opportunity to litigate the issue.  The court granted summary judgment on a claim of forcible

9   detainer, which requires, *inter alia*, a showing that "defendant[s Mehl and Cupp], in the night-

10  time or during the plaintiff-occupant[ Wilmington]'s absence, unlawfully entered on the

11  property," and that, after Wilmington's demand for surrender of the property, the "refuse[d] to

12  surrender possession."  *Id.* at 81-82 (citing Cal. Civ. Proc. Code 1160(a)(2); *Moldovan v. Fischer*,

13  149 Cal. App. 2d 600, 607 (1957)).  The court found that the property was vacant when

14  Wilmington purchased it and that neither Wilmington nor the prior owner had "any agreements,

15  oral or written, to lease the Property prior to the trustee's sale."  *Id.* at 80.  These findings were

16  necessary to decide the merits of the claim, and they foreclose any finding that plaintiffs accrued

17  a debt from a consensual transaction.  Accordingly, plaintiffs can allege only that defendants

18  prosecuted a forcible detainer action for (1) recovery of the property and (2) payment of damages;

19  neither of these issues constitutes a debt under the FDCPA.  *See Arvizu v. GMAC Mortgage, LLC*,

20  No. 1:10-cv-00990-OWW-JLT, 2011 WL 1087157, at *3-4 (E.D. Cal. Mar. 23, 2011) (rejecting

21  claims that filing an unlawful detainer action supported cognizable claims under the FDCPA);

22  *McFadden v. Deutsche Bank Nat. Tr. Co*., 2:10-CV-03004 JAM, 2011 WL 3606797, at *11 (E.D.

23  Cal. Aug. 16, 2011) (dismissing an FCPDA claim with prejudice because the purported debt arose

24  from an "unlawful detainer action . . . [that] simply sought possession of the already re-sold

25  property, not the collection of any debt").  Thus, plaintiff's FDCPA claims should be dismissed

26  with prejudice.

27

28

1        **B.      Fair Credit Reporting Act**

2            Plaintiffs claim that defendants violated the FCRA by failing to comply with 15 U.S.C.

3    § 1681s-2(b), which imposes duties on "furnishers" of credit information.  ECF No. 43 at 15-17.

4            The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency

5    in the banking system, and protect consumer privacy."  *Gorman v. Wolpoff & Abramson, LLP*,

6    584 F.3d 1147, 1153 (9th Cir. 2009).  To ensure the accuracy of consumer credit reports, the

7    FCRA imposes certain duties on sources, known as "furnishers," that provide information to

8    credit reporting agencies ("CRAs").  *Id.*  Under 15 U.S.C. § 1681s-2(b), a furnisher of

9    information must, after receiving notice from a CRA of a dispute regarding furnished

10   information, conduct an investigation; review all relevant information provided by the CRA; and

11   report its findings to the CRA.  The FCRA provides a private right of action against furnishers

12   that fail to comply with the duties established in 15 U.S.C. § 1681a-2(b).  *Nelson v. Chase*

13   *Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).  A claim under § 1681s-2(b)

14   requires a plaintiff to plead: "(1) a credit reporting inaccuracy existed on plaintiff's credit report;

15   (2) plaintiff notified the [CRA] that plaintiff disputed the reporting as inaccurate; (3) the CRA

16   notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher

17   failed to investigate the inaccuracies or further failed to comply with the requirements in [§]

18   1681s-2(b)(1)(A)-(E)."  *Moses v. Experian Info. Sols., Inc.*, No. 15-cv-05548-BLF, 2016 WL

19   3670068, at *2 (N.D. Cal. 2016).

20           Defendants argue that the second amended complaint fails to adequately allege that they

21   furnished information to a CRA, that a CRA provided them with notice of a dispute, or that any

22   credit reporting inaccuracy existed on plaintiff's credit report.  ECF No. 44 at 19-20.  Although

23   the FCRA does not define the term "furnisher," courts have defined it as an entity that "transmits

24   information concerning a particular debt owed by a particular consumer" to a CRA.  *See Heras v.*

25   *Nelnet, Inc.*, 2017 WL 4586334, at *5 (C.D. Cal. Apr. 28, 2017).

26           In the September 2022 findings and recommendations, I found that plaintiffs had failed to

27   allege that a CRA provided defendants with a notice of a dispute, which is required to trigger the

28   statutory duties under § 1681s-2(b).  ECF No. 38 at 7 (citing *Gorman*, 584 F.3d at 1154 (stating

9

1   "duties [under § 1681s-2(b)] arise only after the furnisher receives notice of dispute from a [credit

2   reporting agency]; notice of a dispute received directly from the consumer does not trigger the

3   furnishers' duties under subsection (b)")).  In their second amended complaint, plaintiffs allege

4   "[o]n information and belief," that "defendants Wilmington and PeerStreet . . . transmitted

5   information concerning a particular debt owed by Plaintiff(s) to the national [CRAs]."  ECF

6   No. 43 at 14.  They allege that, on October 7, 2021, they "each individually notified LexisNexis,

7   Experian, TransUnion, Equifax, and Innovis in writing that the Plaintiffs' credit reports reflected

8   inaccurate information as reported to the unlawful detainer registries." *Id.* at 8.  Finally, they

9   allege that "on information and belief, each of the CRAs notified PeerStreet and Wilmington of

10  the Plaintiffs' dispute." *Id.*  However, plaintiffs fail to provide factual allegations regarding the

11  content or nature of the "particular debt owed," the dates or content of any allegedly inaccurate

12  furnishing of information, or any factual basis on which to credit their allegations that defendants

13  received notice of a dispute from any CRAs.  Such conclusory allegations fail to provide adequate

14  notice to defendants of the basis of their claims.

15       Plaintiffs' opposition clarifies the nature of the disputed debt by contending that "Mehl's

16  credit report inaccurately showed that the unlawful detainer and forcible detainer actions resulted

17  in judgments against him."  ECF No. 47 at 13.  However, even if this had been sufficiently

18  alleged, it is barred by collateral estoppel because the state court forcible detainer action resulted

19  in judgments against both Mehl and Cupp. *See* ECF No. 44-1 at 79-93; *supra*, pages 7-8.  Since

20  plaintiffs cannot allege the existence of a bona fide dispute, their claims should be dismissed

21  without leave to amend. *See Gorman*, 584 F.3d at 1163 (holding that only "a bona fide dispute, a

22  dispute that could materially alter how the reported debt is understood . . . gives rise to a

23  furnisher's liability under § 1681s-2(b)"); *Donovan v. Bank of Am.*, 574 F. Supp. 2d 192, 206 (D.

24  Me. 2008) (holding that a claim under § 1681s-2(b) requires the plaintiff to identify "information

25  that a reasonable investigation would have uncovered . . . that would have cast doubt" on the

26  furnisher's report to the CRA).

27

28

10

1

### C.      State Law Claims

2      Plaintiffs' remaining claim is for an alleged violation of California's Rosenthal Fair Debt

3 Collection Practices Act.  ECF No. 43 at 13.  The complaint does not establish diversity of the

4 parties, and plaintiffs have yet to allege a cognizable federal claim.  *See* 28 U.S.C. §§ 1331, 1332;

5 *see also Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987) (holding that

6 the complaint must specifically allege diverse citizenship of all parties to invoke diversity

7 jurisdiction).  Consequently, there is no basis for exercising supplemental jurisdiction over

8 plaintiffs' state law claim, and it too should be dismissed.  *See Carnegie-Mellon Univ. v. Cohill*,

9 484 U.S. 343, 350 n.7. (1988) ("[I]n the usual case in which all federal-law claims are eliminated

10 before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—

11 judicial economy, convenience, fairness, and comity—will point toward declining to exercise

12 jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383

13 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of

14 comity and to promote justice between the parties, by procuring for them a surer-footed reading

15 of the applicable law.").  Accordingly, plaintiffs' state law claim should also be dismissed.

16                              **Conclusion**

17      Plaintiffs have had multiple opportunities to correct the deficiencies in their complaint,

18 and there is no indication that any conceivable amendment could cure such deficiencies.

19 Moreover, state court records show that many of plaintiffs' allegations are materially false.  In

20 light of their pro se status, I will refrain from recommending sanctions.  But I will recommend

21 that their claims be dismissed with prejudice.  *California Architectural Bldg. Prod. v. Franciscan*

22 *Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988) ("Valid reasons for denying leave to amend

23 include undue delay, bad faith, prejudice, and futility.").

24      Accordingly, it is hereby RECOMMENDED that:

25      1.   Defendants' motion to dismiss, ECF No. 44, be granted.

26      2.   Plaintiffs' second amended complaint, ECF No. 43, be dismissed without leave to

27 amend.

28      3.   The Clerk of the Court be directed to close the case.

11

1       These findings and recommendations are submitted to the United States District Judge

2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3   after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6   objections shall be served and filed within fourteen days after service of the objections.  The

7   parties are advised that failure to file objections within the specified time may waive the right to

8   appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez*

9   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10

11  IT IS SO ORDERED.

12

13  Dated:    June 5, 2023                     _____

                                            JEREMY D. PETERSON
14                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28